Juan **CERMENO–CERNA**, Juan de Jesus Cermeno-Ruiz, Benjamin Zermeno-Lerna, Jose M. Jasso-Ramos, Candelario Acosta-Puente, Jose R. Santillanes-Diaz, Nicolas Ramirez-Mora, Jesus Valdez-Murguia, Juan Manuel Jasso-Juarez, Efren Ramirez-Rojas and Giumarra Vineyards Corporation, a California corporation, Plaintiffs,

v.

Raymond F. **FARRELL**, Commissioner of Immigration and Naturalization Service, and George K. Rosenberg, District Director of Immigration and Naturalization Service, Defendants.

Civ. No. 68–403–R.

United States District Court
C. D. California.

Aug. 2, 1968.

Ronald H. Bonaparte, Los Angeles, Cal., for plaintiffs.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, James R. Dooley, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

Haight, Lyon, Smith & Nye, Los Angeles, Cal., for Western Growers Association (amicus curiae).

McDaniel & McDaniel, by, Donald C. McDaniel, Los Angeles, Cal., for Agricultural Producers Labor Committee (amicus curiae).

Cohen & Averbuck, by, Jerome Cohen, Delano, Cal., and J. Albert Woll, Robert C. Mayer, Washington, D. C., Charles K. Hackler, by, Charles K. Hackler, Los Angeles, Cal., for United Farm Workers Organizing Committee, AFL–CIO (amicus curiae).

## MEMORANDUM OF DECISION

REAL, District Judge.

Plaintiffs, including Giumarra Vineyards Corporation (hereafter "Giumarra"), filed their complaint March 12, 1968, seeking a declaration that the enactment of 8 C.F.R. 211.1(b) (1) [1] is

---

1. For the purposes of this action, plaintiffs question only the amendment made June 7, 1967, which added the following language:

"When the Secretary of Labor determines and announces that a labor dispute involving a work stoppage or layoff of employees is in progress at a named place of employment, Form I–151 shall be invalid when presented in lieu of an immigrant visa or reentry permit by an alien who has departed for and seeks reentry from any foreign place and who, prior to his departure or dur-

"arbitrary, an abuse of discretion, and contrary to the Constitution and laws of the United States" and that deportation proceedings commenced against plaintiffs JUAN CERMENO-CERNA, JUAN de JESUS CERMENO-RUIZ, BENJAMIN ZERMENO-LERNA, JOSE M. JASSO-RAMOS, CANDELARIO ACOSTA-PUENTE, JOSE R. SANTILLANES-DIAZ, NICOLAS RAMIREZ-MORA, JESUS VALDEZ-MURGUIA, JUAN MANUEL JASSO-JUAREZ and EFREN RAMIREZ-ROJAS (hereafter collectively called "individual plaintiffs") are "void and contrary to the Constitution and laws of the United States."

Amending their complaint on July 5, 1968, plaintiffs added to their prayer for relief a request for a temporary and permanent injunction restráining defendants from doing any act in regard to the operation, enforcement or execution of the challenged regulation and further alleged a class action "in behalf of themselves and all other immigrants lawfully admitted for residence" and a class of owners of certain places of employment.

> ing his temporary absence abroad has in any manner entered into an arrangement to return to the United States for the primary purpose, or seeks reentry with the intention, of accepting employment at the place where the Secretary of Labor has determined that a labor dispute exists, or of continuing employment which commenced at such place subsequent to the date of the Secretary of Labor's determination."
> Further reference to 8 C.F.R. 211.1(b) in this opinion shall be limited to this language unless specif:cally indicated otherwise.

2. 8 U.S.C. § 1252(b) provides:
    "(b) A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. Determination of deportability in any case shall be made only

The matter proceeded to trial upon the amended complaint and the answer of defendants raising the following issues:

1. Jurisdiction of the Court over the subject matter of the action;
2. Failure of individual plaintiffs to exhaust their administrative remedies; and
3. Standing of individual plaintiffs and Giumarra to either challenge the validity of 8 C.F.R. 211.1(b) (1) or to maintain the action.

At trial no evidence was presented upon the issue regarding the maintenance of a class action and therefore that question is moot. In any event, resolution of that question is not necessary to a determination of the central issues presented to the Court for decision.

## JURISDICTION OF THE COURT OVER THE SUBJECT MATTER OF THE ACTION

### (a) JURISDICTION TO ENJOIN DEPORTATION PROCEEDINGS.

Individual plaintiffs are each now the subject of deportation proceedings instituted pursuant to Section 242(b) of the Immigration and Nationality Act, 8 U.S.C. § 1252(b).[2] Within that section

> upon a record made in a proceeding before a special inquiry officer, at which the alien shall have reasonable opportunity to be present, unless by reason of the alien's mental incompetency it is impracticable for him to be present, in which case the Attorney General shall prescribe necessary and proper safeguards for the rights and privileges of such alien. If any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present. In any case or class of cases in which the Attorney General believes that such procedure would be of aid in making a determination, he may require specifically or by regulation that an additional immigration officer shall be assigned to present the evidence on behalf of the United States and in such case such additional immigration officer shall have authority to present evidence, and to interrogate, examine and cross-examine

is found the "sole and exclusive procedure for determining the deportability of an alien."

█ Judicial review of deportation proceedings is limited to those procedures prescribed in 5 U.S.C. § 701 et seq. excepting those specific provisions of 8 U.S.C. § 1105a the most pertinent distinction providing a six (6) months statute of limitations for filing of the petition for review from a final order of deportation.

█ A review of the statutory and case law clearly compels the determination that the Court is without jurisdic-

tion to stay these deportation proceedings. This should not be construed to indicate that this Court would be without jurisdiction to stay execution of a final order of deportation pending judicial review under proper circumstances.

(b) JURISDICTION TO DETERMINE VALIDITY OF REGULATION.

█ 5 U.S.C. § 704 [3] provides for judicial review of agency action where there is "no other adequate remedy in a court." Individual plaintiffs have been arrested and placed upon bond condi-

the alien or other witnesses in the proceedings. Nothing in the preceding sentence shall be construed to diminish the authority conferred upon the special inquiry officer conducting such proceedings. No special inquiry officer shall conduct a proceeding in any case under this section in which he shall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions. Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—

(1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

(2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

(3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence. The procedure so prescribed shall be the sole and exclusive procedure for determining the deportability of an alien under this section. In any case in which an alien is ordered deported from the United States under the provisions of this chapter, or of any other law or treaty, the decision of the Attorney General shall be final. In the discretion of the At-

torney General, and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 1251 of this title if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title. If any alien who is authorized to depart voluntarily under the preceding sentence is financially unable to depart at his own expense and the Atney General deems his removal to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter."

3. 5 U.S.C. § 704 provides:
"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

tioned upon their refraining from returning to the employment of their employer at the time of their arrest. This action was taken in the guise of enforcement of the provisions of the questioned regulation. Being unable to attack this procedure in any other forum, it would appear that this Court has jurisdiction to determine the validity of the regulation as requested here.

█ Certainly the administrative proceedings cannot provide for a determination of the validity of 8 C.F.R. 211.1 (b) (1). The Special Inquiry Officer can make only a determination of whether or not the regulation is applicable to the factual situation presented by each individual plaintiff in a deportation hearing, and upon finding the facts, apply the regulation regardless of its validity.

Considering the type of review requested herein, the Supreme Court, in Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), says:

"The Administrative Procedure Act provides specifically not only for review of '[a]gency action made reviewable by statute' but also for review of 'final agency action for which there is no other adequate remedy in a court,' 5 U.S.C. § 704. The legislative material elucidating that seminal act manifests a congressional intention that it cover a broad spectrum of administrative actions, and this Court has echoed that theme by noting that the Administrative Procedure Act's 'generous review provisions' must be given a 'hospitable' interpretation. Shaughnessy v. Pedreiro, 349 U.S. 48, 51, [75 S.Ct. 591, 594, 99 L.Ed. 868]; see United States v. Interstate Commerce Comm'n, 337 U.S. 426, 433–435, [69 S.Ct. 1410, 1414–1415, 93 L. Ed. 1451]; Brownell v. We Shung, supra [352 U.S. 180,] 77 S.Ct. 252 [1 L. Ed.2d 225]; Heikkila v. Barber, supra [345 U.S. 229, 73 S.Ct. 603, 87 L.Ed.

972]. [Rusk v. Cort, supra, 369 U.S. [367] at 379–380, [82 S.Ct. 787 at 794, 7 L.Ed.2d 809], the Court held that only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review."

█ We are faced here only with the legal question of the scope of the delegated power of the Attorney General,[4] not with the Court predetermining a question which could be raised *at a deportation hearing*. There is no procedure for questioning the scope of the delegated power of the Attorney General within the deportation process. Plaintiffs' only adequate or effective relief can be granted in this Court. See Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Under these circumstances, this Court has jurisdiction, both under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 and in the exercise of its discretionary powers under the Declaratory Judgment Act, 28 U.S.C. § 2201.

### VALIDITY OF 8 C.F.R. 211.1(b) (1)

█ The basic considerations for determining the validity of an administrative regulation are articulated by the Supreme Court in Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846 (1900):

"[A] regulation * * * should not be disregarded or annulled unless, in the judgment of the court, it is plainly and palpably inconsistent with law. Those who insist that such a regulation is invalid must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress."

Plaintiffs complain that there can be found no authority for the Attorney General to administratively create a new class of alien for admission to the

---

4. Reference herein to action of the Attorney General includes the acts of each of the defendants herein as his duly delegated representatives.

United States. Defendants contend that the Attorney General is given broad authority to promulgate the regulation challenged here by Section 103(a) of the Immigration and Nationality Act, 8 U.S.C. § 1103(a). Defendants further suggest that specific authority can be found in Section 211(b) of the Immigration and Nationality Act, 8 U.S.C. § 1181 (b).

8 U.S.C. § 1103(a) provides in part:

"The Attorney General shall be charged with the administration and enforcement of * * * all * * * laws relating to the immigration and naturalization of aliens * * *. He shall establish such regulations * * as he deems necessary for carrying out his authority under the provisions of this chapter."

The power given the Attorney General is broad within the delegated authority given him by Congress. But such power must be exercised in promulgating regulations that carry out the statutory scheme of admission or readmission of aliens. It must also be exercised within the limits of procedural and substantive due process.

8 U.S.C. § 1181(b) provides:

"Notwithstanding the provisions of section 1182(a) (20) of this title in such cases or in such classes of cases and under such conditions as may be by regulation prescribed, returning resident immigrants, defined in section 1101(a) (27) (B) of this title, who are otherwise admissible may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, reentry permit or other documentation." [5]

The power of Congress to legislate in connection with immigration and naturalization of aliens is plenary. Congress may in the exercise of that power exclude aliens from the United States, impose conditions of entry or reentry, and regulate their conduct and fix their rights while in the United States. Administration of these powers by the Attorney General is not an unconstitutional delegation of power. United States ex rel. Circella v. Sahli, 216 F.2d 33 (7th Cir. 1954), cert. denied 348 U.S. 964, 75 S.Ct. 525, 99 L.Ed. 752 (1955).

An immigrant to the United States must generally possess a valid unexpired immigrant visa upon any entry to the United States.[6] Excepted from this general requirement are immigrants who qualify pursuant to 8 U.S.C. § 1101(a) (27) (B). This immigrant "lawfully admitted for permanent residence who is returning from a temporary visit abroad" [7] has by regulation of the Attorney General been permitted to use Form I-151 in lieu of an immigrant visa or reentry permit "when returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding 1 year." 8 C.F.R. 211.1 (b) (1). This determination of documentation as applied to an 1101 (a) (27) (B) immigrant is within the specifically delegated power of 211(b) of the Immigration and Nationality Act, 8 U.S.C. § 1181(b). That could be said to end. the inquiry here.

But plaintiffs claim that the challenged portion of 8 C.F.R. 211.1(b) (1) is discriminatory in creating a new class of immigrant, i. e., an 1101(a) (27) (B) immigrant who works for an em-

---

5. 8 U.S.C. § 1182(a) (20) provides:
"(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or

document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title."

6. See 8 U.S.C. § 1181(a).

7. These "special immigrants" are issued a Form I-151 generally referred to as a "green card." Each of the individual plaintiffs are green card holders.

ployer certified by the Secretary of Labor as being involved in a labor dispute. In response, defendants claim that the challenged regulation is not being interpreted to apply to an 1101(a) (27) (B) immigrant and that the regulation must be read against the background of *Rosenberg v. Fleuti*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

■■■ A reading of the challenged portion of 8 C.F.R. 211.1(b) (1) would indicate that it applies to (1) an alien, (2) who has departed from the United States, and (3) seeks reentry from any foreign place, (4) for the primary purpose or intention of accepting or returning to employment, (5) at a place where the Secretary of Labor has determined that a labor dispute exists. The regulation thus classifies returning immigrants as:

1.  Those returning to employers not certified by the Secretary of Labor who can use their I–151 green card for entry; and

2.  Those returning to employers certified by the Secretary of Labor who cannot use their I–151 green card for entry.

Certainly, without more, such a distinction is arbitrary and without rational basis when applied to immigrants admitted for permanent residence to the United States who are exercising a privilege to travel to and from their native land to their adopted one. Such a distinction cannot stand within the rationale of Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Recognizing that aliens outside the United States cannot complain of a lack of due process or equal protection of the law, it is clear that aliens residing or present within the United States must be afforded both procedural and substantive due process and equal protection. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954).

Defendants urge upon the Court that such a classification is reasonable and authorized by Congress by its enactment of Section 212(a) (14) of the Immigration and Nationality Act 8 U.S.C. § 1182(a) (14).[8] The Court does not read that section, nor does the legislative history[9] support defendants' contention. Congress delegated power to the Attorney General in conjunction with qualification by the Secretary of Labor for initial entry into the United States "for the purpose of performing skilled or unskilled labor." Nowhere is there found support for delegation of a *continuing* concern by the Secretary of Labor or the Attorney General in the field of alien labor controls.

■■■ The Court must, where permissible, within constitutional and statutory considerations give viability to an administrative regulation. In such circumstances the interpretation given the regulation by the promulgating authority should be controlling where it can reasonably be applied within the language used.

**8.** 8 U.S.C. § 1182(a) (14) provides:
"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a) (27) (A) of this title, (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in sections 1153(a) (3) and 1153(a) of this title, and to nonpreference immigrant aliens described in section 1153 (a) (8) of this title."

**9.** 1965 U.S. Code Cong. & Ad.News, pp. 3333, 3333–3334, 3342–3343, 3345. 1952 U.S.Code Cong. & Ad.News pp. 1653, 1697–1698, 1705.

Charles Gordon, General Counsel of the United States Immigration and Naturalization Service, tells the Court that:

> "The sole purpose of this regulation was to deal with aliens who have been lawfully admitted to the United States for permanent residence but who actually live in a foreign country and come to the United States periodically to work, and who seek entry into the United States for the purpose of engaging in employment at a place where the Secretary of Labor has certified that a labor dispute exists. The limited impact of the regulation is to restrict the use of the alien registration receipt card (the so-called green card) as a document for entry into the United States by aliens who live in a foreign country."

Counsel for defendants has classified this group as aliens commonly known as "commuters" who hold Form I–151 green cards.

Historically the "commuter" has been classified as the alien holding a Form I–151 green card who has not qualified or is not qualifying by maintaining a permanent residence within the United States. In other words, an alien using a status he has not perfected. Present statutory law would require such an alien to obtain an immigrant visa or reentry permit for each entry into the United States. Since these commuters were largely aliens working in the United States border communities and living in contiguous foreign territory there was created the "amiable fiction" of equating employment with permanent residence. This was done without statutory recognition of such a definition. See Amalgamated Meat Cutters and Butcher Workmen of North America, A.F.L.-C.I.O. v. Rogers, 186 F.Supp. 114 (D.Col.1960). Counsel for defendants advises that this "amiable fiction" is more recently being extended beyond border town employment to seasonal workers staying for longer periods of time. However applied, it remains a "fiction."

Recognizing that "commuters" have no statutory or constitutional status, but entry is at the sufferance of the Attorney General, until Congress acts to determine the status of the "commuter," the Court should not intervene. More particularly since these aliens do not qualify for considerations of due process or equal protection of the law. If found here, they most certainly are entitled and are being afforded procedural due process to determine the legality or illegality of their presence.

In such a context and limiting application of 8 C.F.R. 211.1(b) (1) to "aliens who live in a foreign country," the regulation is valid as an exercise of the generally delegated power of the Attorney General in the enforcement of the immigration laws.

## STATUS OF PLAINTIFFS

### 1. PLAINTIFF GIUMARRA VINE-YARDS CORPORATION.

Giumarra is the employer of individual plaintiffs. On July 28, 1967, Robert C. Goodwin, Administrator of the Bureau of Employment Security, United States Department of Labor, pursuant to authority delegated by W. Willard Wirtz, Secretary of Labor, determined that Giumarra was in a "labor dispute involving a work stoppage or layoff of employees."

In Braude v. Wirtz, 350 F.2d 702, 707–708 (9 Cir. 1965), the Court disposed of a similar claim of status by an employer:

> "In our view, appellants have shown neither a legal wrong nor a legal right to be free of the effects they attribute the determinations complained of will have upon their businesses.
>
>    *    *    *    *    *    *
>
> "We therefore conclude that the growers' allegations are insufficient to show that they have suffered a 'legal wrong' or that they have been 'adversely affected or aggrieved * * within the meaning of any relevant statute; and that as a necessary re-

sult, they are without standing to sue."

■ The Court having adopted the interpretation of the challenged regulation as applying to "aliens who live in a foreign country" is led to the conclusion that Giumarra has no standing to complain of the exclusion of aliens from the United States nor to complain of deportation of aliens illegally within the United States.

2. PLAINTIFFS JUAN CERMENO-CERNA, JUAN de JESUS CERMENO-RUIZ, BENJAMIN ZERMENO-LERNA, JOSE M. JASSO-RAMOS, CANDELARIO ACOSTA-PUENTE, JOSE R. SANTILLANES-DIAZ, NICOLAS RAMIREZ-MORA, JESUS VALDEZ-MURGUIA, JUAN MANUEL JASSO-JUAREZ and EFREN RAMIREZ-ROJAS.

This action is brought by these individual plaintiffs pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 1331, 1361, 2201 and the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq., 701 et seq.

The evidence as to each of the individual plaintiffs shows that each of them is admitted for permanent residence in the United States and has been issued I–151 green cards. Deportation proceedings have been instituted pursuant to the challenged regulation against each of the individual plaintiffs as the result of their departures from the United States and return to employment at Giumarra. But defendants simultaneously contend that individual plaintiffs have no standing to bring this action. Resolution of that conflict must be made to determine the standing of individual plaintiffs.

■ To have standing to question the challenged regulations these individual plaintiffs must be persons "suffering legal wrong * * * within the meaning of a relevant statute." [10] Braude v. Wirtz, supra.

The evidence as presented by each of the individual plaintiffs shows that each have been admitted for permanent residence in the United States and when leaving their residence, either from labor camps supplied by their employers or from rented homes, they left belongings in the United States and in each instance intended to return after a vacation to rest and visit with their families and friends.

■ The regulation as interpreted by defendants and as approved in this opinion applies to "aliens who live in a foreign country." The evidence shows that each of the individual plaintiffs qualify for inclusion within the provisions of 8 U.S.C. § 1101(a) (27) (B) immigrants. Therefore, individual plaintiffs are not parties who can claim injury "within the meaning of a relevant statute" and thus have no standing to attack the challenged regulation.

Judgment for defendants. This opinion shall be considered as the findings of fact, conclusions of law and judgment.