SAM ANDREWS' SONS, a general partnership, doing business under the firm name of Sam Andrews' Sons, Plaintiffs,

v.

John N. MITCHELL, Attorney General of the United States, Raymond F. Farrell, Commissioner of Immigration and Naturalization Service, Leonard W. Gilman, Regional Commissioner of Immigration and Naturalization Service, and George K. Rosenberg, District Director of Immigration and Naturalization Service, Defendants.

Civ. No. 71-75-S.

United States District Court,
S. D. California.

April 12, 1971.

Ronald H. Bonaparte, John A. Joannes, and Haight, Lyon & Smith, Los Angeles, Cal., John A. Mitchell, San Diego, Cal., for plaintiffs.

Harry D. Steward, U. S. Atty., Raymond F. Zvetina, Asst. U. S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM OF DECISION AND ORDER

SCHWARTZ, Chief Judge.

### FACTS

Plaintiffs, SAM ANDREWS' SONS, are a general partnership engaged in lettuce and melon growing. In harvesting their produce, plaintiffs historically have relied heavily upon a labor force composed of Mexican citizens who com-

mute daily into the United States from Mexico. The aliens enter this country by use of the so-called "green cards", i. e. Forms I–151, Alien Registration Receipt Card. Under 8 C.F.R. § 211.1 such "commuter aliens" are permitted to use the green cards in lieu of immigrant visas. However, 8 C.F.R. § 211.1(b) (1) prohibits use of green cards when the user comes into the country with the intention of accepting employment at a place where the Secretary of Labor has determined that a labor dispute exists or of continuing employment which commenced at such a place subsequent to the date of the Secretary of Labor's determination. On June 26, 1970, the Secretary of Labor certified that a labor dispute was in progress at the plaintiffs' place of business. Subsequent thereto, officers of the Border Patrol visited the fields of the plaintiffs and interviewed employees with the apparent purpose of determining which, if any, of the employees were using their green cards contrary to the restrictions imposed by 8 C.F.R. § 211.1. Those found to be in violation of that provision were warned that their green cards would be taken if they were again detected working in plaintiffs' fields. The affidavits submitted by the plaintiffs indicate that prior to this interrogation, 95% of their employees commuted from Mexico, that as a result thereof, they have not been able to employ non-resident aliens, that many resident alien employees have been frightened away by the activities of the Border Patrol, and that they have been compelled to hire less experienced personnel to replace those lost, with resulting higher costs.

Plaintiffs, by their complaint, seek a declaratory judgment that 8 C.F.R. § 211.1(b) (1) insofar as it is sought to be enforced by defendants against so-called commuter aliens is an unconstitutional abuse of discretion and plaintiffs further request a preliminary and a permanent injunction against such enforcement of the regulation.

Shortly prior to the hearing on plaintiffs' application for preliminary injunction, defendants moved for dismissal under Rule 12(b) (1) for lack of subject matter jurisdiction and under Rule 12(b) (6) for failure to state a claim upon which relief could be granted, and for summary judgment on the ground that there was no genuine issue as to any material fact. At the time of hearing, it was stipulated that defendants motions could be heard and considered by the court together with plaintiffs' motion.

## STANDING

▇ The defendants urge that plaintiffs lack standing to prosecute the instant action, relying particularly on Cobb v. Murrell, 386 F.2d 947 (5th Cir., 1967). However, that case and others employing like reasoning appear to rest upon the notion that a demonstrable legal interest is a necessary element of standing. This viewpoint was specifically rejected in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970), where it was held that a business providing data processing services had standing to challenge a ruling by the Comptroller of the Currency which permitted national banks to make data processing services available to other banks and bank customers.

The Court noted that:

The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise. *Id.* at 152, 90 S.Ct. at 829.

If so, the case or controversy requirement is met. The Court continued:

The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complaint is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Id.* at 153, 90 S.Ct. at 830.

Significantly, the Court noted that the "trend is toward enlargement of the

class of people who may protest administrative action." *Id.* at 154, 90 S.Ct. at 830.

The regulation here questioned directly affects plaintiffs' access to labor and the very economy of their operation. Under the broad doctrine of *Data Processing, supra,* the interest sought to be protected by the complaint appears to be within the zone of the interests subjected to regulation. Plaintiffs have standing to prosecute their action.

## STATUTES AND REGULATIONS INVOLVED

Examination of pertinent statutes and regulations is appropriate at this point.

8 C.F.R. § 211.1 *Visas* provides, with certain exceptions not material here, that:

(a) *General.* A valid unexpired immigrant visa shall be presented by each arriving immigrant alien applying for admission to the United States for lawful permanent residence.

It further provides that:

(b) *Aliens returning to an unrelinquished lawful permanent residence—* (1) *Form 1–151, Alien Registration Receipt Card.* In lieu of an immigrant visa, an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding 1 year may present Form I–151, Alien Registration Receipt Card, duly issued to him, provided that during such absence he did not travel to, in, or through any of the following places:

After listing certain travel restrictions, § 211.1(b) (1) concludes:

When the Secretary of Labor determines and announces that a labor dispute involving a work stoppage or lay-off of employees is in progress at a named place of employment, Form I–151 shall be invalid when presented in lieu of an immigrant visa or reentry permit by an alien who has departed for and seeks reentry from any foreign place and who, prior to his departure or during his temporary absence abroad has in any manner entered into an arrangement to return to the United States for the primary purpose, or seeks reentry with the intention, of accepting employment at the place where the Secretary of Labor has determined that a labor dispute exists, or of continuing employment which commenced at such place subsequent to the date of the Secretary of Labor's determination.

The purpose of the last sentence, which is under attack here, is to preclude the use by a lawful permanent resident alien of Form I–151 in lieu of his obtaining a returning resident immigration visa, or, prior to departure, of his obtaining a reentry permit, when such would adversely affect a domestic labor dispute. 32 Fed.Reg. 8378 (1967).

The restrictive sentence is applied solely to aliens who, in fact, reside in another country and who seek to return to the United States for the primary purpose of taking employment in areas where labor disputes have been determined to exist. It does not restrict the entry of commuter aliens who enter for the purpose of employment in areas free of certified labor disputes, nor does it apply to aliens residing in fact in the United States who are exercising a privilege to travel to and from their native land to the United States. It is limited in scope and purpose.

Title 8 U.S.C. § 1103(a) provides in part:

The Attorney General shall be charged with the administration and enforcement of \* \* \* all \* \* \* laws relating to the immigration and naturalization of aliens \* \* \* He shall establish such regulations \* \* \* as he deems necessary for carrying out his authority under the provisions of this chapter.

Title 8 U.S.C. § 1181(b) provides in part:

[I]n such cases or classes of cases and under such conditions as may be by

regulation prescribed, returning resident immigrants, defined in section 1101(a) (27) (B) of this title, who are otherwise admissible may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigration visa, reentry permit or other documentation.

Title 8 U.S.C. § 1101(a) (27) (B) defines the term "special immigrant" to include:

an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad.

Title 8 U.S.C. § 1101(a) (20) provides:

The term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

## MERITS OF THE CONTROVERSY

■ Plaintiffs' attack upon 8 C.F.R. § 211.1(b) (1) is mounted largely on their interpretation of recent cases which have considered the regulation and upon their contention that there is no rational basis for any distinction in document requirements for reentry into the United States between I–151 immigrants who have established permanent residence in this country and those who in fact reside outside the United States and come here daily or frequently to work, the so-called commuter aliens.

Careful examination of the cases which have in various ways considered this and related problems discloses that they do not afford clear support to plaintiffs' position.

The plaintiffs' position rests primarily on the juxtaposition of Cermeno-Cerna et al. v. Farrell et al., 291 F.Supp. 521 (C.D.Cal., 1968) and Gooch v. Clark, 433 F.2d 74 (9th Cir., 1970). Plaintiffs view the Cermeno case as premised on the proposition that though 8 C.F.R. § 211.1(b) (1) could not validly

be applied to any alien within the definition of 8 U.S.C. § 1101(a) (27) (B), commuter aliens were not within that definition. This proposition is then taken to have been negated by the holding in *Gooch, supra.*

Scrutiny of the opinion in the *Cermeno* case does not bear out plaintiffs' contentions. First, nowhere does the opinion state that the regulation could not validly be applied to any alien within the definition of 8 U.S.C. § 1101(a) (27) (B). Second, the decision appears not to rest entirely upon a determination of the meaning of § 1101(a) (27) (B). Rather, the case seems essentially to have turned on propositions of a constitutional nature.

In holding that in view of the due process requirements of the Fifth Amendment, 8 C.F.R. § 211.1(b) (1) could not validly apply to aliens *residing* in the United States, the court observed:

Recognizing that *aliens outside the United States cannot complain of a lack of due process or equal protection* of the law, it is clear that aliens residing or present within the United States must be afforded both procedural and substantive due process and equal protection. Galvan v. Press, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Cermeno-Cerna v. Farrell, *supra*, 291 F.Supp. at 528, emphasis added.

It is true that the court noted that the "amiable fiction" of equating employment with permanent residence was "done without statutory recognition of such a definition", *Id.* at 529. However, it also stated that:

Recognizing that "commuters" have no statutory or *constitutional* status, but entry is at the sufferance of the Attorney General, until Congress acts to determine the status of the "commuter," the Court should not intervene. More particularly since these aliens do not qualify for considerations of due process or equal protection of the law. *Id.* at 529, emphasis added.

Thus, the *Cermeno* opinion rested at least partially on the differentiation between constitutional rights available to aliens in fact residing in the United States and those in fact residing abroad. Nothing in Gooch v. Clark, *supra*, challenges this distinction.

The most that can be derived from the statutes, cases and regulations is that both resident aliens and commuter aliens have a coincidence of *status*. But with that the similarity, almost fictional in nature, stops. Resident aliens in addition to status have established a *presence* in this country; they acquire economic, social and familial ties here, they establish an involvement and concern with governmental policies here. Commuter aliens have only status. This status is recognized by the statutes and regulations; and the commuter alien too can acquire a presence by exercising his right and privilege to reside in this country.

Not only does such residence carry with it a constitutional standing that the commuter does not possess, but the lack of actual residence serves as a differentiating factor upon which the Attorney General, in exercising his discretion, may rationally rely in more stringently controlling the use to which commuters may put their green cards. In *Fook Hong Mak v. Immigration and Naturalization Service*, 435 F.2d 728 (2nd Cir., 1970), it was acknowledged that the Attorney General could, in the exercise of his statutorily granted discretion, deny certain benefits to an alien who otherwise met the requirements for obtaining those benefits, so long as the discretion was rationally exercised. In this case, the action of the Attorney General in imposing conditions of reentry would seem to have a rational basis and to be reasonably designed to effectuate an appropriate governmental policy, namely, minimization of the destructive incidents of labor-management disputes. The injection of almost wholly alien elements into such disputes would seem to exacerbate them rather than to allow the natural forces of labor-management to have free play toward accommodation and settlement.

## DECISION

For the foregoing reasons, it is the decision of the court that:

1. Plaintiffs' motion for preliminary injunction is denied; and

2. Defendants' motion for summary judgment is granted.

The memorandum of decision herein shall constitute the findings of fact and conclusions of law in accordance with Rule 52(a), Federal Rules of Civil Procedure.

It is so ordered.