MATTER OF HOFFMAN-ARVAYO

In Exclusion Proceedings

A-14206689

*Decided by Board September 7, 1971*

(1) The term "commuter" encompasses the "seasonal commuter" who enters to perform seasonal work for extended periods, but whose annual stay in the United States is for less than 6 months. However, the "seasonal commuter" must not be confused with the resident alien physically present in the United States for more than 6 months in the aggregate during the past year, who is not within the commuter category.

(2) Where appellant, a native and citizen of Mexico, following admission for permanent residence resided in the United States from 1964 until August 1969 when he returned his family to Mexico, and thereafter (from August 1969 up until he was detained for hearing on March 2, 1970) resided and was continuously employed in Tucson, Arizona, during which period he visited his family in Mexico on intermittent weekends, he did not acquire commuter status by reason of such intermittent weekend visits with his family. Hence, his absence to visit his family in Mexico on the weekend immediately preceding his application for entry as a returning resident on March 2, 1970, was an innocent, casual, and brief excursion within the meaning of *Rosenberg* v. *Fleuti*, 347 U.S. 449 (1963), and his return therefrom does not constitute an entry upon which to predicate a ground of exclusion.

EXCLUDABLE: Act of 1952—Section 212(a)(9) [8 U.S.C. 1182(a)(9)]—Admits having committed crime, or acts which constitute the essential elements of crime, involving moral turpitude, to wit, bigamy.

ON BEHALF OF APPLICANT: NO ONE

The applicant, a native and citizen of Mexico, was admitted to the United States for permanent residence on March 26, 1964. He applied for admission as a returning resident alien at the port of Douglas, Arizona on March 2, 1970. He was detained for an exclusion hearing since he appeared to be inadmissible under the provisions of section 212(a)(9) of the Immigration and Nationality Act as an alien who admits the commission of a crime involving moral turpitude or acts which constitute the essential ele-

750

ments of such a crime, to wit, the crime of bigamy. After a hearing, the special inquiry officer ordered the applicant admitted to the United States. The special inquiry officer certified the case to the Board of Immigration Appeals for final decision. The issue before us is whether the applicant, an alien admitted for permanent residence who maintains living quarters in the United States while gainfully employed for five days each week, acquired "commuter" [1] status by reason of his intermittent weekend departures to visit his family in Mexico, thereby precluding a finding that his departures were not "meaningful" within the purview of *Rosenberg* v. Fleuti, 347 U.S. 449 (1963).

Briefly, the facts concerning this issue are as follows: The applicant married Francisca Gonzalez Caballero at Lowell, Arizona on September 19, 1963. He testified that he believed that Francisca was born in the United States (p. 13). He was admitted as a non-quota immigrant on March 26, 1964 pursuant to the provisions of section 101(a)(27)(C) of the Immigration and Nationality Act. He resided with Francisca in Tucson, Arizona until she left him in May or June of 1965 (pp. 13 and 14). The applicant testified that his marriage to Francisca Gonzalez Caballero has not been terminated and that she now resides in Douglas, Arizona with another man (pp. 14, 16, 18 and p. 2 of Ex. 4). He supports the two children born of this marriage by paying $100 monthly under an order entered by a court in Douglas, Arizona.

The applicant married Rosa Marie Chavez-Garcia at Agua Prieta, Mexico on March 21, 1966. She resided with the applicant in Los Angeles, California for approximately eight months between December 1968 and August 1969 (p. 17). The applicant, his wife Rosa Maria and their two children then returned to Agua Prieta, Sonora, Mexico (p. 10). The applicant testified that he resumed his employment with a painting contractor in the United States "about a week" after the family returned to Mexico (p. 11). He has had continuous employment with this painting contractor in Tucson, Arizona from August 1969 up until March 2, 1970 when he was detained for an exclusion hearing.

---

[1] An alien admitted for permanent residence is classified as a "commuter" when he actually lives in a contiguous foreign country but enters the United States periodically to work. Such an alien by the very nature of his residence in a foreign contiguous territory makes an entry within the meaning of the immigration laws each time he returns to his employment in the United States, *Gooch* v. *Clark*, 433 F.2d 74 (9 Cir., 1970), cert. denied sub nom. *Gooch* v. *Mitchell*, 402 U.S. 995; *Cermeno-Cerna* v. *Farrell*, 291 F. Supp. 521, 529 (C.D. Cal., 1968); *Matter of Estrada-Pena*, 12 I. & N. Dec. 429, 430 (BIA, 1967).

751

During this period, the applicant resided and worked in Tucson for five days of the week and visited his family in Agua Prieta, Sonora, Mexico on intermittent weekends. He testified that on a majority of the weekends, he had to work or help his brother who resides in Tucson, and would visit his family in Mexico biweekly. He further testified that he was always admitted as a returning resident alien on the occasion of his periodic returns from Agua Prieta, Mexico to Tucson, Arizona until his application for admission on March 2, 1970.

The applicant's excludability under section 212(a)(9) as a criminal alien depends upon whether he was seeking to make an entry on March 2, 1970 within the purview of section 101(a)(13) of the Immigration and Nationality Act when he returned from Mexico after visiting his family over the weekend. The question of whether the applicant was seeking to make an entry on this occasion depends in turn on whether, during the weekend prior to March 2, 1970, he made a "meaningful departure" to Mexico as contemplated by the Supreme Court's interpretation of the quoted term in the case of *Rosenberg* v. *Fleuti, supra.* If the applicant had acquired the status of a commuter alien, then his departure to his home in Mexico on the weekend preceding March 2, 1970 was a "meaningful departure" and, therefore, his return to the United States on March 2, 1970, when he applied for admission at Douglas, Arizona as a returning resident alien, would constitute an entry, *Gooch* v. *Clark, supra* footnote 1; *Cermeno-Cerna* v. *Farrell, supra* footnote 1 at p. 529; *Matter of Estrada-Pena, supra* footnote 1.

The special inquiry officer concludes that the applicant did not acquire the status of a "commuter" during the period of August 1969—March 1970 when he resided and worked in Tucson Arizona from Monday to Saturday of each week, usually departing to Mexico for biweekly visits with his family and occasionally departing for intervening weekends. The special inquiry officer in reaching this conclusion refers to a comment by the court in the case of *Cermeno-Cerna* v. *Farrell, supra,* footnote 1 at p. 529, which quotes counsel for the defendant Immigrant Service as stating that the "amiable fiction"[2] of a commuter "is more re-

---

[2] Present statutory law requires commuter aliens residing abroad who have been admitted as immigrants for permanent residence to obtain reentry documents for every entry. The term "amiable fiction" refers to the fact that despite the statutory requirement they are now permitted to reenter upon presentation of their alien registration card (Form I-151) based upon the fiction that their presence in the United States while employed amounts to permanent residence in the United States.

cently being extended beyond border town employment to seasonal workers staying for longer periods of time." The special inquiry officer is of the opinion that this is a novel extension of the commuter concept which should be considered by the Board of Immigration Appeals. He certified the case for this purpose.

An immigrant alien who has been lawfully admitted for permanent residence may commence or continue to reside in foreign contiguous territory and commute to his United States place of employment. The authority for such an arrangement is derived from an administrative interpretation of section 211(b) of the Immigration and Nationality Act which provides in substance that returning resident immigrants may be readmitted without documentation in the discretion of the Attorney General and under such conditions as he may prescribe by regulations, *Gooch v. Clark, supra* footnote 1. There are two types of commuters, those who commute regularly, normally entering at least twice weekly, and those who enter to perform seasonal work for extended periods, but whose annual stay in the United States is for less than six months. The latter are referred to as "seasonal commuters" or "seasonal workers." The seasonal commuter must not be confused with the resident alien who has been physically present in the United States for more than six months in the aggregate during the past year. Such resident alien is not considered to be within the commuter category.

The applicant has been physically present in the United States for more than six months in the aggregate during the one year period immediately preceding his application for entry on March 2, 1970. He resided and was employed in the United States at Tucson, Arizona and Montebello, California from the time of his original entry for permanent residence on March 26, 1964 until he returned his family to Mexico in August of 1969. He returned to the United States within one week of this departure and has had continuous employment with a painting contractor in Tucson, Arizona up until he was detained for a hearing on March 2, 1970. During this period, he maintained a residence in Tucson, visiting his family intermittently on weekends (p. 2 of Ex. 5). Furthermore, there is no showing that the applicant was ever issued a commuter status card (Form 178). We affirm the conclusion reached by the special inquiry officer that the applicant did not acquire the status of a commuter prior to his departure from the United States on the weekend he visited his family in Mexico immediately preceding March 2, 1970.

We have reviewed the evidence relied upon by the special inquiry officer and affirm his conclusion that the applicant's departure on the weekend in question to visit his family in Mexico was an innocent, casual and brief excursion which was not disruptive of his resident alien status within the principle stated by the Supreme Court in *Rosenberg* v. *Fleuti, supra.* The applicant's marriage with his second wife, although bigamous on his part, has been a subsisting relationship since it was entered into on March 21, 1966. He has been supporting this wife, the child which is the issue of this marriage and a child born to his wife prior to her marriage to the applicant. The applicant's bigamous marriage did not break up a valid subsisting marriage as his former wife had left him to reside with another man.

The case is distinguishable from those cases [3] in which we have held that the departure of a lawful permanent resident alien amounts to a "meaningful departure" when the purpose of leaving the country was to accomplish some object which was itself contrary to some policy reflected in our immigration laws. The applicant testified that he was not aware that his second marriage, without prior divorce, amounted to bigamy under the laws of Mexico (p. 3 of Ex. 4).

Since the applicant was not making an entry on March 2, 1970, the issue of whether he is excludable as a criminal alien under section 212(a)(9) of the Immigration and Nationality Act becomes moot. An appropriate order affirming the special inquiry officer's order will be entered.

**ORDER:** It is directed that the order entered by the special inquiry officer on July 6, 1970 providing for the alien's admisson as a returning resident alien be and the same is hereby affirmed.

---

[3] *Matter of Corral-Fragoso,* 11 I. & N. Dec. 478 (BIA, 1966); *Matter of :herbank,* 10 I. & N. Dec. 522 (BIA, 1964).