**SAM ANDREWS' SONS, etc., Plaintiff-Appellant,**

v.

**John N. MITCHELL et al., Defendant-Appellee.**

**No. 71-2015.**

United States Court of Appeals, Ninth Circuit.

March 17, 1972.

Ronald H. Bonaparte (argued), Haight, Lyon & Smith, Los Angeles, Cal., for plaintiff-appellant.

Joseph Sureck (argued), Regional Counsel, San Pedro, Cal., John N. Mitchell, U. S. Atty. Gen., Washington, D. C.,

Raymond F. Zvetina, Asst. U. S. Atty., San Diego, Cal., for defendant-appellee.

Before CHAMBERS, WRIGHT and CHOY, Circuit Judges.

CHOY, Circuit Judge:

Appellant Sam Andrews' Sons, a partnership, grows lettuce and melons in the Imperial Valley, California. Ninety-five per cent of its work force consists of aliens who commute daily from their homes in Mexico, entering the United States on the authority of "green cards," Form I-151, issued pursuant to 8 C.F.R. § 211.1(b) (1).[1] This regulation, issued by the Attorney General pursuant to the rule-making authority vested in him by 8 U.S.C. § 1103(a), also provides that the green cards may not be used to secure entry into the United States when an immigrant alien reenters the United States with the intention of accepting or continuing employment at a place of business where the Secretary of Labor has determined that a labor dispute exists.[2]

On June 26, 1970, the Secretary of Labor certified that a labor dispute was in progress at appellant's place of business. Subsequently, officers of the Border Patrol visited appellant's fields and interviewed its employees with the apparent purpose of determining which, if any, of them were using their green cards contrary to the regulation. Those found in violation of the regulation were warned that their green cards would be revoked if they were again detected working in appellant's fields. Since these visitations, many of appellant's employees have quit, and appellant has been forced to hire less experienced and more costly personnel.

Appellant then brought this action seeking a declaratory judgment that the regulation was invalid and a preliminary and permanent injunction against its enforcement. The District Court held that appellant has standing to prosecute this action, a determination which is not contested on appeal. The District Court then upheld the validity of the regulation, holding that while resident aliens and commuter aliens have a coincidence of status, "[r]esident aliens in addition to status have established a *presence* in the country. . . . Not only does such residence carry with it a constitutional standing that the commuter does not possess, but the lack of actual residence serves as a differentiating factor upon which the Attorney General, in exercising his discretion, may rationally rely in more stringently controlling the use to which commuters may put their green cards." 326 F.Supp. 35, 39 (S.D., Calif., 1971) (emphasis in original).

Sam Andrews' Sons appealed. We need not decide whether the regulation violates the Constitution, for we hold that it is invalid as an abuse of the dis-

---

1. "In lieu of an immigrant visa, an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding 1 year may presnt Form I-151, Alien Registration Receipt Card, duly issued to him . . . ."

2. "When the Secretary of Labor determines and announces that a labor dispute involving a work stoppage or layoff of employees is in progress at a named place of employment, Form I-151 shall be invalid when presented in lieu of an immigrant visa or reentry permit by an alien who has departed for and seeks reentry from any foreign place and who, prior to his departure or during his temporary absence abroad has in any manner entered into an arrangement to return to the United States for the primary purpose, or seeks reentry with the intention, of accepting employment at the place where the Secretary of Labor had determined that a labor dispute exists, or of continuing employment which commenced at such place subsequent to the date of the Secretary of Labor's determination." 8 C.F.R. § 211.1 (b) (1). *See generally,* "Aliens in the Fields: The 'Green Card Commuter' Under the Immigration and Naturalization Laws," 21 Stan.L.Rev. 1750 (1969).

Unless otherwise noted, "the regulation" will refer hereafter to this labor dispute portion of § 211.1(b) (1).

cretion committed to the Attorney General.[3]

We last considered 8 C.F.R. § 211.-1(b) (1) in Gooch v. Clark, 433 F.2d 74 (9th Cir., 1970), cert. denied, Gooch v. Mitchell, 402 U.S. 995, 91 S.Ct. 2170, 29 L.Ed.2d 160 (1971), where we found that the green card system is authorized by the Immigration and Naturalization Act, and that an alien commuter is within the class of persons described by 8 U.S.C. § 1101(a) (27) (B): "an immigrant, lawfully admitted for permanent residence, who is returning from a temporary visit abroad." Such a special immigrant is admissible under the informal documentation requirements authorized by 8 U.S.C. § 1181(b), and exempt from the labor certification provisions of 8 U.S.C. § 1182(a) (14). We did not, however, specifically rule upon the labor dispute regulation now before us.

■■ The Attorney General has been granted discretionary power to make rules to administer the Immigration and Naturalization Act. His regulations must be upheld if they are founded "on considerations rationally related to the statute he is administering." Fook Hong Mak v. Immigration and Naturalization Service, 435 F.2d 728, 730 (2nd Cir.,1970). See Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 44 L.Ed. 846 (1900). However, this labor dispute regulation and the Government's interpretation and application of it creates two distinctions: first and primarily, the distinction between the commuter who works for a certified employer and the commuter who does not; and second, the distinction between the commuter and otherwise simi-lar § 1101(a) (27) (B) immigrants who permanently reside in the United States. Neither of these distinctions is rationally related to the administration of the Immigration and Naturalization Act.

■■■ Neither distinction can be justified by 8 U.S.C. § 1182(a) (14), which provides that alien workers may not enter the United States unless the Secretary of Labor has certified that their presence will not adversely affect the United States labor market.[4] This statutory provision is not applicable to § 1101(a) (27) (B) special immigrant. In addition, it applies only to initial entry into the United States, not to reentry. Nothing in the statute or its legislative history supports continuing regulation of alien laborers by the Secretary of Labor or by the Attorney General. Cermeno-Cerna v. Farrell, 291 F.Supp. 521, 528 (C.D., Cal., 1968). Congress empowered the Secretary and the Attorney General to regulate the initial entry of an alien into the United States, but once a commuter has been lawfully admitted, he may "make regular entrances into the United States as an immigrant 'lawfully admitted for permanent residence, who is returning from a temporary visit abroad.'" Gooch, supra, 433 F.2d at 81.

There is nothing in the statute or its legislative history intimating that Congress intended the green card system to be used as a means of Government intervention in domestic labor disputes. And yet this regulation enables the Secretary of Labor to certify that a labor dispute is in progress and thus effectively eliminate an employer's entire commuter

3. To the extent that Cermeno-Cerna v. Farrell, 291 F.Supp. 521 (C.D., Cal., 1968), appeal dis'd as moot sub nom. Giumarra Vineyards Corp. v. Farrell, 431 F.2d 923 (9th Cir., 1970), is contrary to this holding, it is expressly disapproved.

4. "Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor [shall be excluded] unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed."

work force. The regulation provides no procedure for obtaining a certification, no hearings for either union, employer, or employees, no standards to guide the Secretary in issuing certification.

■ Although the regulation purports to apply to reentering green card holders at the border, as actually applied, it is operative only when a commuter has reentered the United States and is on the job. If he is working for an uncertified employer, he may use his green card and is unmolested. If he is working for a certified employer, however, he is warned to quit his job or face the loss of his green card. There is nothing in the statute authorizing the Secretary or the Attorney General to determine where a commuter may or may not work.

■ Nor may either distinction be justified as a valid exercise of the Attorney General's discretion. There is no rational basis to distinguish between commuters and resident § 1101(a) (27) (B) immigrants. As the District Court recognized, the commuter and the resident alien have the same immigration status. They are both § 1101(a) (27) (B) immigrants. *Gooch, supra.* Nevertheless, the District Court held that the actual presence of the resident alien in the United States provides a rational basis for distinguishing the two classes. 326 F.Supp., *supra,* at 39. See also *Cermeno-Cerna, supra,* 291 F.Supp. at 529. But in *Gooch, supra,* 433 F.2d at 79, we found that "[c]ommuters have been accorded the privilege of residing permanently in the United States, for each of them at one time received a valid immigration visa. *Their disinclination to exercise that privilege is of no moment."* (emphasis supplied). Both commuters

and noncommuters have the same immigration status. Both may continue to reside in the United States if they so desire. We see no reason to place legal significance upon the commuter's decision not to live here now.

■ Nor can this commuter-resident distinction be based on constitutional presence: while the commuter and the resident alien possess the same status, the resident alien has a constitutionally protected presence. Any person within the United States, citizen or alien, resident or non-resident, is protected by the guarantees of the Constitution. Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534, 541 (1971); Kwong Hai Chew v. Colding, 344 U.S. 590, 596, 73 S.Ct. 472, 97 L.Ed. 576 (1953) and cases quoted at 596, 73 S.Ct. 472 n. 5; Johnson v. Eisentrager, 339 U.S. 763, 771, 70 S.Ct. 936, 94 L.Ed. 1255 (1950). The commuter when on the job in the United States is entitled to full constitutional protection. His constitutional status is not terminated, altered or diminished because he spends the night across the border. *See Kwong Hai Chew, supra.* Such a departure is merely a "temporary visit abroad." *Gooch, supra,* 433 F.2d at 79–81.

This regulation discriminates between commuters who work for certified employers and those who do not and has nothing to do with immigration status or constitutional presence. It turns solely upon where an immigrant works. This distinction is not rationally related to the Immigration and Naturalization Act. We, therefore, hold the labor dispute provision of 8 C.F.R. § 211.1(b) (1) invalid.

Reversed and remanded.