ELDER et al. v. WHITESIDES et al.

(Circuit Court, E. D. Louisiana. March 22, 1895.)

No. 12,383.

1. CONSPIRACY—UNLAWFUL COMBINATIONS—INJUNCTION.
    A conspiracy to prevent the loading or unloading of a vessel, except by such labor as may be acceptable to defendants, may be enjoined, though no particular overt act against that particular vessel is alleged or proved. Arthur v. Oakes, 11 C. C. A. 209, 63 Fed. 310, followed.

2. SAME—CRIMINAL ACTS.
    It is no ground for refusing an injunction to restrain conspirators from doing irreparable damage to complainant's property rights that some of the acts enjoined would subject the wrongdoers to a criminal prosecution. Arthur v. Oakes, 11 C. C. A. 209, 63 Fed. 310, followed.

3. SAME—JURISDICTION OF FEDERAL COURTS.
    A suit by an alien against citizens of the United States to enjoin a conspiracy to prevent the loading or unloading of complainant's ship is within the equity jurisdiction of the federal courts, independently of any question as to interference with interstate or foreign commerce. Arthur v. Oakes, 11 C. C. A. 209, 63 Fed. 310, and Hagan v. Blindell, 6 C. C. A. 86, 56 Fed. 696. followed.

This was a bill in equity, filed March 4, 1895, by Elder, Dempster & Co., of Liverpool, England, owners of certain steamships, against William Whitesides et al., citizens of Louisiana, alleging an unlawful combination and conspiracy on the part of said defendants to prevent the loading or unloading of complainants' steamships at Gretna, La., except by such labor as might be acceptable to said defendants; that such combination and conspiracy absolutely prevented complainants from loading or unloading their steamers, at said port of Gretna, by other than the said defendants and their confederates. An injunction restraining said defendants from continuing their said combination and conspiracy is prayed for.

Gurley & Mellen, for complainants.
W. L. Thompson, for defendants.

PARLANGE, District Judge. The defendants have been granted all the time which they have requested to present their side of the case. The argument made by their counsel may be divided under four heads. He urged: First, that there is no allegation or proof of any overt act committed by the defendants against the particular vessel mentioned in the bill; second, that a court of equity cannot enjoin crime; third, that no damages have actually been inflicted upon the vessel; and, fourth, that the proof of conspiracy is insufficient.

In a recent case decided by the United States circuit court of appeals, Seventh circuit (Arthur v. Oakes, 11 C. C. A. 209, 63 Fed. 310), in which Mr. Justice Harlan was the organ of the court, all the law points made by the counsel for the defendants have been passed upon, clearly and distinctly. In speaking of combinations and conspiracies, Mr. Justice Harlan said:

"According to the principles of the common law, a conspiracy upon the part of two or more persons, with the intent, by their combined power, to wrong

others, or to prejudice the rights of the public, is in itself illegal, although nothing be actually done in the execution of such conspiracy. This is fundamental in our jurisprudence. So, a combination or conspiracy to procure an employé or body of employés to quit service, in violation of the contract of service, would be unlawful, and, in a proper case, might be enjoined, if the injury threatened would be irremediable in law. It is one thing for a single individual or for several individuals, each acting upon his own responsibility, and not in coöperation with others, to form the purpose of inflicting actual injury upon the property or rights of others. It is quite a different thing, in the eye of the law, for many persons to combine or conspire together with the intent, not simply of asserting their rights or of accomplishing lawful ends by peaceable methods, but of employing their united energies to injure others or the public. An intent upon the part of a single person to injure the rights of others or of the public is not in itself a wrong of which the law will take cognizance, unless some injurious act be done in execution of the unlawful intent. But a combination of two or more persons with such an intent, and under circumstances that give them, when so combined, a power to do an injury they would not possess as individuals acting singly, has always been recognized as in itself wrongful and illegal."

The justice cites approvingly the language of another court, as follows:

"There is nothing in the objection that to punish a conspiracy where the end is not accomplished would be to punish a mere unexecuted intention. It is not the bare intention that the law punishes, but the act of conspiring, which is made a substantive offense by the nature of the object to be effected." State v. Buchanan, 5 Har. & J. 317.

The justice further said:

"The authorities all agree that a court of equity should not hesitate to use this power [injunction] when the circumstances of the particular case in hand require it to be done in order to protect rights of property against irreparable damage by wrongdoers. * * * That some of the acts enjoined would have been criminal, subjecting the wrongdoers to actions for damages or to criminal prosecution, does not, therefore, in itself determine the question as to interference by injunction. If the acts stopped at crime, or involved merely crime, or if the injury threatened could, if done, be adequately compensated in damages, equity would not interfere. But as the acts threatened involved irreparable injury to and destruction of property for all the purposes for which the property was adapted, as well as continuous acts of trespass, to say nothing of the rights of the public, the remedy at law would have been inadequate. 'Formerly,' Mr. Justice Story says, 'courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses. But now there is not the slightest hesitation, if the acts done or threatened to be done to the property would be ruinous, irreparable, or would impair the just enjoyment of the property in future. If, indeed, courts of equity did not interfere in cases of this sort, there would, as has been truly said, be a great failure of justice in this country.' "

So far as the question of jurisdiction is concerned, it is clearly settled, both by Arthur v. Oakes, supra, and by the decision of the United States circuit court of appeals of this (the Fifth) circuit. Hagan v. Blindell, 6 C. C. A. 86, 56 Fed. 696. In both of those cases the jurisdiction depended entirely, as in the case at bar, upon the diverse citizenship of the parties and the equitable powers of the court. In the former of said cases, Mr. Justice Harlan said:

"In the course of the argument, some reference was made to the act of congress of July 2, 1890, entitled 'An act to protect trade and commerce against unlawful restraints and monopolies' (26 Stat. 209). It is not necessary in this case to decide whether, within the meaning of that statute, the acts and combinations against which the injunction was aimed would have been in restraint

of trade or commerce among the several states. This case was not based upon that act. The questions now before the court have been determined without reference to the above act, and upon the general principles that control the exercise of jurisdiction by courts of equity."

In the latter of said cases (Hagan v. Blindell, 6 C. C. A. 86, 56 Fed. 696), Judge Toulmin, as the organ of the Fifth circuit court of appeals, said:

"The only practical question presented by the record is whether the court below had jurisdiction of the case as made by the bill. We concur in the conclusion reached by the learned judge who decided the case below, as expressed in his opinion, and which is made a part of the record, that the jurisdiction of the court is maintainable on general principles of equitable jurisdiction; and a careful examination of the case satisfies us that, under all the facts before it, there was no error in the court awarding a preliminary injunction."

The decisions above referred to clearly dispose of all the law points raised by defendants' counsel. The proof of conspiracy is made out by the affidavits offered by complainants. The only proof offered by the defendants is their affidavit, which confines itself to a denial that they interfered with the complainants, or prevented the loading of the vessel Niagara, or caused damages to the complainants. This seems to be in line with the argument of their counsel, and to be based upon the theory that the jurisdiction of the court depends upon unlawful overt acts having been committed against the particular vessel mentioned in the bill, and upon actual damages having been caused the complainants, prior to the application for the injunction. There is no denial of the agreement or conspiracy to do the unlawful things charged in the bill, which conspiracy is the gravamen of the case. The preliminary injunction must issue.