**UNITED STATES of America,**
**Libelant,**

v.

**18 PACKAGES OF MAGAZINES,**
**Respondents.**
**No. 41194.**

United States District Court
N. D. California, S. D.

Dec. 30, 1964.

Cecil Poole, U. S. Atty., San Francisco, Cal., for plaintiff.

Marshall Krause, San Francisco, Cal., for defendant.

WEIGEL, District Judge.

This cause came on to be heard on November 16, 1964, on claimant's motion for summary judgment.

The undisputed facts show that the magazines which are the subject of this proceeding were purchased abroad by claimant and shipped to this country.[1] At various times from January through October of 1962, they were seized and excluded by United States Customs authorities as obscene. In justifying the seizure and exclusion, the Government relies on 19 U.S.C. § 1305. A libel to forfeit the magazines was filed here on December 27, 1962. Claimant answered the libel, asserting that § 1305 is unconstitutional and denying that any of the seized magazines are obscene. The case has not yet come to trial. It is also undisputed that from the time of seizure to the present, there has been no judicial scrutiny of these magazines or adversary hearing as to their character.

■ Claimant contends that the procedures for determining the issue of obscenity under 19 U.S.C. § 1305 are unconstitutional because they abridge his rights to freedom of speech and press under the First Amendment to the Constitution of the United States. The statute does appear to empower government officials to seize and exclude imported magazines suspected of being "obscene" and to do so prior to any judicial determination that they are, in fact, "obscene". It is plainly indicated in A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964),[2] that such procedures are unconstitutional. Speaking

for the Court, Mr. Justice Brennan observed that "if seizure of books precedes an adversary determination of their obscenity, there is danger of abridgement of the right of the public in a free society to unobstructed circulation of nonobscene books." Id. at 213, 84 S.Ct. at 1727.

■ The Government attempts to avoid that case by arguing that the First Amendment has no inhibitory effect on Congress's "complete" control of foreign commerce. This novel theory is not buttressed by citation to a single court opinion which has ever intimated such a possibility. The only rationale offered in support of the theory is to the effect that unless it be accepted, there will be practical limitations on the ability of Congress to restrict the importation of "obscene" books or other material. This may well be. However, Constitutional guarantees may not be subverted to expediency. The Constitution, as it is written and construed by the United States Supreme Court, must be strictly respected.

■ The Government goes on to argue that even if the First Amendment does apply to Congressional powers over foreign commerce, it would not prohibit a law authorizing summary seizure of foreign magazines. It is "manifest" "without argument", the Government contends, that the language of the First Amendment could not refer to the "foreign press". Even if it be conceded, *arguendo*, that the "foreign press" is not a direct beneficiary of the Amendment, the concession gains nought for the Government in this case. The First Amendment does protect the public of this country. As Mr. Justice Brennan pointed out in A Quantity of Copies of Books v. State of Kansas, supra, there is a *"right of the public* in a free society to unobstructed circulation of nonobscene

1. Aspects of this case were treated by Judge Sweigert in United States v. 18 Packages, 227 F.Supp. 198 (N.D.Calif., 1963). That decision narrowed the applicability of the statute and resulted in the release of a substantial number of magazines originally seized.

2. Although the opinion for the Court was signed by only four Justices, the concurring opinion of Mr. Justice Black and joined by Mr. Justice Douglas indicates complete agreement with the reasoning of Mr. Justice Brennan.

books" (emphasis added). The First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers. Indeed, the essence of the First Amendment right to freedom of the press is not so much the right to print as it is the right to read. The rights of readers are not to be curtailed because of the geographical origin of printed materials.

It is therefore ordered, adjudged and decreed that claimant's motion for summary judgment is granted and the United States Attorney, the Marshal of this Court and the Collector of Customs are ordered to return and deliver to the claimant any and all of the books and magazines now under detention and seizure under the libel in this case, provided only that the claimant comply with such other provisions of the customs laws as impose functions or duties upon the Collector of Customs concerning such delivery.