**TIMES NEWSPAPERS LIMITED (OF GREAT BRITAIN)**

v.

**McDONNELL DOUGLAS COR-PORATION et al.**

**No. CV 74–2658–PMH.**

United States District Court,
C. D. California.

Dec. 2, 1974.

190

Mark E. Hurwitz, Hurwitz & Hurwitz, Orange, Cal., for plaintiff.

Robert C. Packard, Kirtland & Packard, Los Angeles, Cal., James M. Fitz-Simons, Mendes & Mount, New York City, Joseph R. Austin, Tuttle & Taylor, Los Angeles, Cal., for defendants.

James G. Butler, Butler, Jefferson & Fry, W. Marshall Morgan, Morgan, Wenzel & McNicholas, Los Angeles, Cal., for amicus curiae.

## ORDER

PEIRSON M. HALL, District Judge.

This is a diversity suit, 28 U.S.C. §§ 1331 and 1332, whereby the plaintiff

a citizen of England, seeks declaratory relief (28 U.S.C. §§ 2201 and 2202) and an injunction.

The plaintiff is the publisher of "THE SUNDAY TIMES OF LONDON," and the defendants are the lawyers for/and McDonnell Douglas Corporation, a defendant in many suits pending under MDL Docket #172 (28 U.S.C. § 1407) for the crash of a McDonnell Douglas-made plane near Paris on March 3, 1974, killing all human beings aboard, about 350, and destroying the plane. A faulty product by McDonnell Douglas is alleged as the cause of the crash.

The plaintiffs in the death cases and McDonnell Douglas and other defendants have been diligently engaged in discovery by deposition since shortly after the suits were filed.

The plaintiff seeks by this suit a declaratory judgment that its representatives are entitled to be present at all depositions and to publish their reports of what occurred; and upon such declaratory judgment seek an injunction *pendente lite* to restrain defendants' lawyers from preventing the presence of plaintiff's reporters at the taking of depositions which are being taken with the agreement of the parties and the approval of the court at the office of defendant Packard.

The defendants, in addition to filing a motion to dismiss on the ground that the complaint does not state a claim for relief, have filed copious, but not well organized, briefs, citing many cases, few of which are in point.

The heart of the question is whether or not the provisions in the First Amendment to the United States Constitution providing that "Congress shall make no law . . . abridging the freedom . . . of the press" override the provisions in the Federal Rules of Civil Procedure, specifically, those in 30 (f) which provide that the deposition shall be *"securely sealed"* and mailed to or filed with the Court, and of the Local Rule which requires the Clerk to reseal the deposition after the Clerk has check-ed to see whether or not the original deposition has been signed by the deponent and certified by the notary. If they must be *"securely sealed,"* then they must be *securely* kept from the press as well as others, and the taking of them does not permit the public or press to be present except as permitted by F.R. Civ.P. 26(c)(5).

Aside from the main point, there are other matters raised which should be disposed of before reaching it.

The first one made by the defendants is that the plaintiff being a citizen of another Country has no access to the judicial power of the United States Courts to enforce any rights.

This point is disposed of adversely to the defendants' position not only by the Constitution itself which provides in Article 3, Section 2, that "The judicial Power shall extend to all Cases, in Law and Equity, *arising* under this Constitution, *the Laws of the United States,* and Treaties made, or which shall be made, under their Authority; . . . *between* . . . *the* Citizens [of a State] and *foreign* States, *Citizens,* or *Subjects"*; as well as by Title 28 of the United States Code, Section 1332 providing for diversity jurisdiction in amounts exceeding $10,000 where the action is between *"citizens of a State,* and *foreign* states or *citizens* or *subjects* thereof,"* as well as a long line of cases beginning with The Sapphire, 78 U.S. (11 Wall) 164, 20 L.Ed. 127 (1870). The court states, in that case, on that proposition, the following:

"The first question raised is as to the right of the French Emperor to sue in our courts. On this point not the slightest difficulty exists. A foreign sovereign, *as well as any other foreign person, who has a demand of a civil nature against any person here, may prosecute it in our courts.* To deny him this privilege would manifest a want of comity and friendly feeling. Such a suit was sustained in behalf of the King of Spain in the third circuit by Justice Washington

and Judge Peters in 1810. The Constitution expressly extends the judicial power to controversies between a State, or *citizens thereof,* and *foreign* States, *citizens,* or *subjects, without reference to the subject-matter of the controversy."* (italics supplied)

The 9th Circuit in 1972 was just as positive in Sam Andrews' Sons v. Mitchell, 457 F.2d 745, at page 749, where it said: "Any person within the United States [whether] citizen or *alien, resident or non-resident,* is protected by the guarantees of the Constitution." (italics supplied)

The 11th Amendment of the Constitution which came into being as a result of the Court's decision in Chisholm v. Georgia, 2 U.S. (2 Dall) 419, 1 L.Ed. 440 (1793) modifies Article 3, Section 2, above quoted, only by prohibiting suits *"against"* one of the United States by citizens of another state, or by citizens or subjects of foreign states. Thus the plaintiff cannot be barred from bringing this suit because it is an alien.

It is of great significance that the 11th Amendment, adopted shortly after the Constitution, uses the word "against" as contrasted with the word "between" as is used in Article 3, Section 2. "Between" makes no distinction as to whether one is plaintiff or defendant, whereas "against" would apply to and prohibit the judicial power only from being used "against" a state of the United States.[1]

◼ The defendants claim that the First Amendment does not give "free speech" to a foreign *newspaper.* The reasoning is as obscure as the case they cite in support of it is inapplicable, Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1973). But, as nearly as I can figure, their position is that "freedom of the press" referred to in the Amendment I is only that press which is published in America for American readers, and that inasmuch as plaintiff is published in England for English readers, they have no rights here. The complaint alleges that it is an English corporation: it alleges jurisdiction under 28 U.S.C. § 1332(a)(2) which permits suit by "citizens" *of foreign states.* Thus, the complaint by implication alleges that it is a citizen of England. In any event, it is a *"foreign subject"* specifically permitted access to our courts by Article III, Section 2 of the United States Constitution. The point is without foundation.

◼ Other reasons assigned by the defendants as to why the plaintiff should have no relief are because (1) the plaintiff comes into court with "unclean hands," in that the plaintiff has been *found guilty of contempt by Parliament* for publication of articles which were unfriendly to those who were defendants in the *Thalidomide* case, and (2) that the plaintiff's employees in this case are disclosing information to counsel for the plaintiffs in the crash cases and have obtained copies of depositions even before they have been signed.[2]

It ill becomes the defendant to come in and talk about the plaintiff having unclean hands. The assertion that plaintiff was found guilty of contempt by the House of Lords is not true, and the defendant with the slightest research could have found it to be, or knew, so. The fact is that the plaintiff prepared an article for publication and submitted it to the Attorney General. As required by English law, he took it before the Courts, and one of the Appeals Courts reversed the injunction against the article which had been granted by the lower court. The plaintiff did not, however, publish the article but, instead, voluntarily consented that the matter should be heard by the House of Lords as to whether or not the article should be published. The matter was extensively debated, and the House of Lords found that if the plaintiff published the article it *would be* contemptous. The

---

1. See discussion by John Randolph as one of counsel in Chisholm v. Georgia, supra, as to the use of the word "between."

2. The latter are not alleged to have been used by the plaintiff in any publicity or newspaper article.

article was never published. The Attorney General even waived costs against the Times because he said they had been "fully cooperative." Furthermore, defendants in their briefs assert that Elaine Potter wrote the article under consideration, which is denied by her affidavit.

As to the accusation that the employees of the plaintiff in this case disclosed information to the plaintiffs' counsel in the death cases, there is nothing unusual about that, except perhaps that their disclosure was limited to counsel for the plaintiffs in the death cases and did not make disclosures to the defendants. It is customary in the preparation of a lawsuit for the lawyer to seek information wherever he can get it. It is particularly necessary in the death cases as the decedents' next of kin have no information—the defendants have it all, and are securing writs which prevent, in my judgment, the proper procedures to be taken to assure *due process to the next of kin of those who were* killed in the disaster and who are scattered in 20 countries of the world. Testimony by plaintiff's witnesses indicated there were approximately a thousand next of kin claimants. They were not cross-examined on that point, nor did defendants produce any evidence thereon. The plaintiffs may be aliens, but they are "persons" and the Constitution of the United States grants the rights of "persons" to due process in this country and access to our courts.[3]

The defendants also claim a possible prejudice to a fair trial because what is sent to plaintiff in England may be relayed back locally under contract with United States publishers and get to the eyes of possible jurors. The testimony at the hearing in this court, which took several days, was to the effect that the circulation of plaintiff's paper in the United States was about 5,000. With close to 3,000,000 persons living in the vicinity of this court, it is difficult to see how a newspaper of that circulation among the 200,000,000 people of the United States can so greatly influence the minds of enough people in this jurisdiction as to prevent the securing of a wholly unbiased and unprejudiced jury. The point is groundless, and defendants' claim that plaintiff's American press contracts *might* result in articles which *might* prejudice American jurors is too speculative.

Each party claims the other has the burden of proving irreparable injury to it if the injunction is granted or not granted. The plaintiff has shown that by reason of its investment to date in investigative reporting, its commitments to a book, and in and to a film which is made or nearly so, it will or may lose that investment as well as additional moneys which will be spent in salaries and the like. The defendants claim, if the plaintiffs prevail, it will suffer irreparable injury in two respects (a) the publicity will encourage dependents of deceased to make claims against it and they have a "due process (right!)" to settle these claims without court intervention; and (b) it would result in trial by the press. The difficulty with the main claim is that it necessarily implies that defendants have a right to settle 345 death cases with *1000 dependents or next of kin, without them even knowing they can sue in the United States Courts for an impartial adjudication of liability and*

---

3. The court can take judicial notice that the defendants and their insurance carriers search out such next of kin for settlement purposes, but one is led to wonder if defendants tell, or told, any of them the provisions of Article III, Section 2, of the Constitution of the United States and of 28 U.S.C. § 1332 (a) (2) permitting non-citizens to sue in the United States Courts for any claim "arising under this Constitution [and] the *laws of the*

*United States.*" It must be kept in mind that these are product liability cases and that the law on that subject in California is well defined, and that the Federal Aviation Act of 1958, as amended, and the rules and regulations made thereunder, cover every conceivable phase of airplane construction. Whether such rules cover flight by an American plane in a foreign country is not presently material in this case.

*damages*, instead of depending only on the defendants' idea of a *"fair"* settlement. The second is merely an unwarranted assumption. None of said points entitle the defendants to the motion to dismiss.

The other contentions of the parties are not necessary for discussion *at this time* except the controlling issue.

Coming now to the controlling point: it is whether or not the "free press" provisions of the First Amendment override the provisions now incorporated in Federal Rules of Civil Procedure, Title V, sections 26 to 37, entitled "Depositions and Discovery." There are 8 sections in various Rules in Title V, F.R. Civ.P. which are of interest here. They are Rule 26(b)(1) which so broadens the scope of discovery in depositions and other discovery that "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought [may] lead to the discovery of admissible evidence." Rule 26(c) provides for protective orders[4] and Rule 28(a) designates persons before whom depositions may be taken. This Rule is modified by Rule 29 which permits parties to stipulate that depositions may be taken by any person. It need not be further considered; Rule 30(e) and (f), which are set forth in the margin on the next page;[5] 32(a), permits any portion of a deposition to be used (i. e., made public) *"at the trial"* "so far as admissible" and "relevant," Rule 32(a)(4).

The right to speak and publish does not carry with it the unrestrained right to gather information, Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); nor special access to information not available to the pub-

4. A protective order was sought by defendants but was denied except as to clause (6) of F.R.Civ.P. 26(c).

Clause (5) of Rule 26(c) permits a protective order by the court "that discovery be conducted with no one present except persons designated by the court." In denying this clause in the order, the court felt that it had to take into consideration the fact that while a committee of lawyers had been appointed for discovery, it would be a denial of due process to prohibit other lawyers for plaintiffs from being present. Also it would require an order for each session, as counsel for both sides would need experts to consult on the very technical matters of design and engineering, which would lead to unnecessary delays.

I did not articulate this in my order because I did not think it was necessary, and felt that ordering compliance with clause (6) of Rule 26(c), requiring sealing of the depositions until opened by order of the court, would sufficiently protect the witnesses and the defendants. Moreover, the parties had agreed [F.R.Civ.P. 29] to take the depositions in defendant Packard's office, and that the parties would rent a room near his office for a temporary depository. All counsel and such other persons as the court may order were to be provided free access to the depository.

5. *"Rule 30(e) Submission to Witness; Changes; Signing.* When the testimony is fully transcribed the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the witness for making them. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness within 30 days of its submission to him, the officer shall sign it and state on the record the fact of the waiver or of the illness or absence of the witness or the fact of the refusal to sign together with the reason, if any, given therefor; and the deposition may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part."

*"Rule 30(f) Certification and Filing by Officer; Exhibits; Copies; Notice of Filing.* (1) The officer shall certify on the deposition that the witness was duly sworn by him and that the deposition is a true record of the testimony given by the witness. He shall then *securely* seal the deposition in an envelope indorsed with the title of the action and marked 'Deposition of [here insert name of witness]' and shall promptly file it with the court in which the action is pending or send it by registered or certified mail to the clerk thereof for filing."

lic generally. Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

The matter of the privacy of depositions and the sealing of them is not new. It was of concern to the First Congress as seen from that portion of Section 30 of the Judiciary Act, approved September 24, 1789, providing, *inter alia,* that the deposition after taking "*shall . . . be by him the said magistrate sealed up and directed to such court, and remain under his seal until opened in court.*"

What are now the first 10 Amendments of the Constitution were the last 10 of 12 amendments submitted by Congress to the States by a resolution passed either September 25 or September 29, 1789. Thus, both the restrictive provisions concerning depositions above quoted and the resolution submitting Amendment I were almost co-temporaneous, and it is hardly logical that Congress would create the right to privacy in depositions September 24, 1789 (the date of approval of the Judiciary Act by the President) and ask the States to destroy that right the next day or so. Actually, the first 10 Amendments were not approved by the required number of States until almost 2 years after the passage of the first Judiciary Act.

In Beale v. Thompson, 12 U.S. (8 Cranch) 70, 3 L.Ed. 491 (1814), the Supreme Court with Marshall, Livingston, Todd, Duvall and Story sitting, by Judge Story, made short shrift of the right to open a deposition before the trial. The cryptic opinion is quoted in full:

"The single point in this case is, whether the circuit court of the district of Columbia erred in rejecting the deposition of Tunis Craven?

"Independent of all other grounds, the court are of the opinion, that the fact of the deposition's not having been opened in court, is a fatal objection. The statute of 24th September 1789, ch. 20, § 30, is express on this head. The judgment of the circuit court must be affirmed."

The provisions of Section 30 of the Judiciary Act of 1789 hereinabove quoted were carried forward in Section 865 of the Revised Statutes; from thence to Section 1474 of the Compiled Statutes of 1901; and from thence to Section 641 of Title 28 of the Judicial Code, the 1934 Edition. In 1937 they were taken out of Section 641 of Title 28 and out of the Judicial Code along with Sections 639 and 640 and incorporated in the Federal Rules of Civil Procedure 26 to 37.

The plaintiff makes much of the fact that "trials" are entitled to be public, and that thus the press is entitled to be present at depositions. This was sought by the United States in the *United Shoe Machinery* case, 198 F. 870, 871 (1912). But as pointed out by Judge Brown [871 to 872]:

"The cases cited by the United States which uphold the undisputed principle of publicity in trials and in judicial proceedings do not in the slightest degree support the contention of the Untied States. . . . This question is whether the public and the press should be admitted to the taking of depositions for use at a trial not then begun, but which is to take place in the future.

"The question is easily solved upon a consideration of the essential difference between a trial or a judicial proceeding held by an officer with judicial authority, and the merely preliminary step of taking depositions. . . . [a deposition is] testimony given extrajudicially . . . for the purpose of subsequent use in a *trial. . . .*"

The Court further pointed out:

"Both common law judges and juries are compelled to receive testimony in the form of written depositions, and upon such written testimony of witnesses whom they have never seen nor heard may make decisions as to the rights of parties. . . .

"If judges and juries may not object that they have not seen and heard the witness while he is testifying, the press and public may not object.

"Furthermore, neither at law nor in equity does a deposition become evidence in a case until it is offered by one of the parties; until there is an opportunity for a judicial hearing as to its competency. . . .

"The only opportunity for redress which the party has against improper or irrelevant testimony follows the filing of the deposition.

"If all is to be made public before it is reduced to final form in writing and before there is an opportunity for a hearing upon the propriety and competency of the testimony, all effective protection against scandal, impertinence, and irrelevancy is practically gone. . . .

"For the court to enforce a rule that the public and the press shall have [a right] to listen before the parties to the case have an opportunity to be heard would be a plain violation of elementary rules of fair play. . . .

"The provisions in these rules [former Equity Rules, now essentially incorporated in F.R.Civ.P.] is an indication that oral proceedings before an examiner are regarded as essentially different from proceedings in open court. It is quite clear that the taking of depositions, either at law or equity, is in no proper sense a trial or a part of a judicial trial, using the term to mean 'that final examination and decision of matter of law as well as fact, for which every antecedent step is a preparation, which we commonly denominate the trial.' [citing cases]."

The *United Shoe Machinery* case led to the adoption in 1913 of 15 U.S.C. § 30 which is applicable only to antitrust suits brought by the United States. It reads:

"*§ 30. Depositions for use in suits in equity; proceedings open to public.* In the taking of depositions of witnesses for use in any suit in equity brought by the United States under sections 1 to 7 of this title, and in the hearings before any examiner or special master appointed to take testimony therein, the proceedings shall be open to the public as freely as are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable."

 The fact that Congress limited that section to antitrust suits brought by the United States is clear evidence of their intention that the restrictions contained in Section 1474 of the Compiled Statutes—now in F.R.Civ.P. 26 to 37— remain the law. Furthermore, if the First Amendment gave the right to attendance at depositions, why should there be any such statute as 15 U.S.C. § 30?

The fact that F.R.Civ.P. § 26(b) added the provision that "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence," is all the more reason for limiting the attendance at depositions to only the principals and not the public. In the crash cases the plaintiffs have the prodigious task of actually proving their case "out of the defendants' mouths." In doing so, hearsay, both written and oral, shop memos, designs of structural features and much other material are sought, and subject to discovery. Yet a court cannot tell until the deposition is opened at the trial [and it may never be opened —thus never public] whether such matters are admissible and may thus be made public or not.

Attached as Appendix A is a complete list of all cases and authorities cited by both parties together with a brief statement concerning each. Most of the cases cited are far from the points involved, but a reference to a few other than those above cited will bear out the conclusion that a deposition is not a

trial, and the rights of the press are not restrained or even involved.

In Craig v. Harney, 331 U.S. 367, at 374, 67 S.Ct. 1249, at 1254, 91 L. Ed. 1546, one word emphasizes what is public when the court said, "What transpires *in* the court room is public property."

In Branzburg v. Hayes, 408 U.S. 665, at page 684, 92 S.Ct. 2646 at page 2658, 33 L.Ed.2d 626 (1972), the court said: "It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public."

Enforcement of the principles of sealing and privacy of depositions, until they were ordered opened by the court, which were adopted by the First Congress, and carried through with no alteration of principle for 185 years, demonstrates not only the wisdom but also the necessity of abiding by those principles.

History teaches us that slight departures from clear principles lead to more and more "minimal" departures, many of which for the moment may seem in the highest public interest, but, when that happens, there comes, too soon, the day when personal preferences of judges, press, and lawyers overcome long established principles, and law instead of being a *rule* of action becomes a cabal, with publicity in the media being the goal, instead of justice.

■ In sum, this court holds: That depositions before a qualified officer in an equity or law case are not a judicial trial, nor a part of a trial, but a proceeding preliminary to a trial, and neither the public nor representatives of the press have a right to be present at such taking. Until a deposition has been presented to the court [not the Clerk], and ordered opened, it does not become evidence in the case, nor has either party until then an opportunity to be heard upon the question of the competency, materiality, or relevancy of the statements made by the witness, and the public can have no right to know what the testimony is until the court knows what it is.

It follows that as a matter of law the plaintiff is not entitled to a declaratory judgment that it or its agents and employees may be present at the taking of depositions in the damage cases. And, not being entitled to such judgment, it also follows that the plaintiff is not entitled to an injunction against the defendants from refusing them admission to the depositions.

■ Moreover, the evidence needed to support an injunction is not persusive: The damage must be great, it must be immediate and it must be irreparable. Howsoever much plaintiff has expended, the damage is not immediate in that plaintiff relies on the possible cancellation of a book contract, which, if it occurs and the plaintiff is entitled to recover, the same can be had in a suit for money. It must not be overlooked that the contract was not put in evidence, nor was there any evidence that the contract required the plaintiff's employees or representatives to be present at the depositions.

While this was only a hearing on an injunction *pendente lite*, it would appear there is nothing to add or to be added by any party at a trial, and thus this may be treated as a final judgment. It the parties think otherwise, a stipulation or a noticed hearing to that effect will suffice.

While I have no alternative but to deny the plaintiff the relief it seeks and to grant the defendants' motion to dismiss, I nevertheless commend the plaintiff for the dignified and legal way it has raised this question. . It is a refreshing contrast to the conduct of the leading (and now most) United States papers of handling sensations founded upon what they refer to as "an informed source," or "a reliable source."

The defendants' motion to dismiss is granted.

## APPENDIX A

### LIST OF CASES CITED BY PARTIES WITH BRIEF STATEMENT ON EACH

1. Aetna Life Insurance Company of Hartford, Connecticut v. Haworth, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937)

 Declaratory Judgment Act authorizes relief consonant with the exercise of judicial functions under the Constitution.

2. Amalgamated Food Employees' Union v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968)

 Peaceful picketing in a location generally open to the public is usually protected as to speech and conduct by the First Amendment. The property is the functional equivalent of a municipal business, and access to the property may not be limited merely because the surrounding property isn't under the same ownership. Exercise of First Amendment rights is subject to the same extent as are states and municipalities so far as control of the use of public property.

3. Julius M. Ames Co. v. Bostitch, Inc., 235 F.Supp. 856 (S.D.N.Y. 1964)

 In this antitrust action a motion was made for an order vacating interrogatories because of trade secrets. Parties are entitled to full discovery, but the Court will discourage unauthorized use. A protective order was issued forbidding disclosure, requiring affidavits of compliance, and directing that the information not be made public.

4. Apco Oil Corp. v. Certified Transp. Inc., 46 F.R.D. 428 (D.C.Mo.1969)

 General and blanket objections had been made to interrogatories. Plaintiff should propose a conference and show how the information sought could be obtained from material already in defendant's possession. If agreement impossible, on return to court there must be specific factual objections.

5. Associated Press v. United States, 326 U.S. 1, 20, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945)

 Prosecution under the Sherman Antitrust Act. A command that the government shall not impede the free flow of ideas does not afford non-governmental combinations a refuge if they impose restraints upon that constitutionally protected freedom. Freedom to publish is protected, but freedom to keep others from publishing is not.

6. Azbill v. Fisher, 84 Nev. 414, 442 P.2d 916 (1968)

 The right conferred on the press doesn't embrace access to sources for gathering information not available to the general public. Even inside the courtroom, a member of the press enjoys no greater privilege than any other individual.

7. Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)

 State action is involved when the Court is asked to give damages in enforcing restrictive covenants, and this violates 14th Amendment. Under the circumstances of the case, the reasons for the rule denying standing to raise another's right, which is only procedural, is outweighed by the need to protect fundamental rights.

8. Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949)

 Suit was brought in Federal court to enforce judgment from another Federal court. Validity of latter depends on the Constitution and laws of the United States. Federal Rules of Civil Procedure have the force and effect of statutes, and any judg-

ment, civil or criminal, lacking in due process is void.

9. Bolchos v. Darrel, D.C.S.C.1795, 3 Fed.Cas. No.1,607, P. 810—cited in *Khedivial, infra.*

10. Branzburg v. Hayes, 408 U.S. 665, 681, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)

Newspaper man is required to disclose his sources to grand jury. At 684, 92 S.Ct. 2646, the Court said that the 1st Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally. Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings, Justices' conferences, meetings of other official bodies gathered in executive session, and meetings of private organizations.

11. Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941)

The petitioners had been punished for criminal contempt because of statements made pending trial. There were no legislative restrictions, so Court had to find that the publications created such a likelihood of bringing about the substantive evil as to deprive them of the constitutional protection. There must be a clear and present danger of disrespect for the judiciary and effect a disorderly and unfair administration of justice.

12. Briscoe v. Reader's Digest Association, Inc., 4 Cal.3d 529, 535, 93 Cal. Rptr. 866, 870, 483 P.2d 34, 38 (1971)

An action for invasion of privacy lies for printing name and details of very old crime. The Court pointed out the difference between reports of recent crimes and past crimes. "The need for constitutional protection is much greater under these circumstances, where deadlines must be met and quick decisions made, than in cases where

more considered editorial judgments are possible."

13. Burnham Chemical Co. v. Borax Consolidated, Ltd., 7 F.R.D. 341 (N. D.Cal.1947)

Case involved taxation of costs. Court wouldn't allow the cost of making a copy of a deposition, because in that District the practice is to open depositions when filed and permit inspection.

14. Cembrook v. Sterling Drug Company, Inc., 231 Cal.App.2d 52, 41 Cal. Rptr. 492, 495 (1964), hearing denied Feb. 3, 1965

Requirement of public trial is satisfied when the doors are open. There is no requirement that trial be publicized, and whether it is or not is purely incidental.

15. Central Hardware Company v. NLRB, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972).

This involves a Section 7 NLRB case, and Court below had considered it like the *Logan Valley* case (supra) which was decided on constitutional grounds. Remanded.

16. Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler, 305 F.Supp. 1210 (N.D.Cal.1969)

Patent or trademark infringment. Preliminary injunction is an extraordinary and far-reaching remedy, the granting of which is wholly within the discretion of the court. It will be granted only where plaintiff makes a clear and convincing showing of need, and also makes an affirmative showing of the existence of the following requirements:

(1) probability of success on the merits at trial;

(2) irreparable injury;

(3) maintenance of the status quo;

(4) a balance of equities in favor of plaintiff.

17. Covey Oil Co. v. Continental Oil Co., 340 F.2d 993 (10th Cir. 1965)

In antitrust case, there was motion to quash a subpoena duces tecum to non-party witness. It was denied, but modified by protective order that material only be available to counsel and independent certified public accountants, and only in connection with the case. Persons attending were limited, and documents and depositions were put under seal.

18. Craig v. Harney, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947)

Contempt proceeding. Although reports and comments were highly inaccurate, that's not enough to subject reporter to contempt charge. "A trial is a public event. What transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity." The Court also said: "Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Id* at 377, 67 S.Ct. at 1255.

19. Davies Warehouse Company v. Brown, 137 F.2d 201 (U.S.Emerg. Ct.App.1943), reversed sub nom., Davies Warehouse Company v. Bowles, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635 (1944)

Final holding is that public warehouses have been declared to be public utilities in California under the Constitution and the Public Utilities Act. Thus, rates were exempt from control and regulation under the Emergency Price Control Act.

20. Davis v. Romney, 55 F.R.D. 337 (E.D.Pa.1972)

Defendants had sought information contained in binders which had been used by grand jury, and a protective order was sought, requiring that proceedings not be made public. Information sought had nothing to do with grand jury proceedings and would not breach its secrecy. Burden is on those who want to keep information from becoming public,

and the mere suggestion of possible sensation or prejudice is not sufficient. *Id.*, at 345.

21. D'Ippolito v. American Oil Company, 272 F.Supp. 310 (S.D.N.Y.1967)

Depositions were allowed to proceed even though criminal proceedings were pending. Court ordered that no one else be present, that they be immediately sealed and not opened till criminal proceedings were over or by court order. 15 U.S.C. § 30 applies only to suits in equity brought by the Government, not to private antitrust suits.

22. Dymo Industries, Inc. v. Tapeprinter, Inc. 326 F.2d 141, 143 (9th Cir. 1964)

Suit involved patent and trademark infringement and preliminary injunction was sought. There was no abuse of court's discretion in finding great doubt as to the validity of the patent. Court is not bound to decide doubtful and difficult questions or law or disputed questions of fact.

23. Elder v. Whitesides, 72 F. 724 (Cir. Ct.E.D.La.1895)

English plaintiffs were permitted to bring suit in equity for an injunction to stop a conspiracy which prevented unloading of plaintiff's ships.

24. Eldorado Coal and Mining Company v. Marriotti, 215 F. 51 (7th Cir. 1914)

The Court has jurisdiction of a personal injury suit by an alien against a foreign citizen.

25. Essex Wire Corp. v. Eastern Electric Sales Co., 48 F.R.D. 308 (D.C. Pa.1969)

A protective order had been issued, and plaintiff now sought permission to make public certain information he possessed. Defendant was ordered to show good cause why it shouldn't be made public. Competitive disadvantage was enough reason to preserve secrecy as to

some items, but others were allowed to be disclosed.

26. Estes v. Texas, 381 U.S. 532, 539, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)

Criminal case in which part of proceedings were televised. Court said that pretrial proceedings might be even more subject to prejudicial publicity than the trial itself. While maximum freedom must be allowed the press, its exercise must be subject to the maintenance of absolute fairness in the judicial process. "The law . . . favors publicity in legal proceedings, so far as that object can be attained without injustice to the persons immediately concerned. The public are permitted to attend nearly all judicial inquiries . . ." *Id.*, at 542, 85 S.Ct. at 1632.

27. Evans v. Abney, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970)

There is no 14th Amendment violation where the state applied its principles of construction to determine that a trust failed because it couldn't be enforced on a racially restrictive basis. There was no violation of federally protected rights, nor wrongful state action because the local courts eliminated discrimination by closing the park which was the subject of the trust.

28. E. W. Scripps Co. v. Fulton, 100 Ohio App. 157, 125 N.E.2d 896 (1955)

Prohibition was granted to prohibit an order which excluded press and public during cross examination of a witness in a pandering case solely because defense counsel said he would be better able to compel the witness to tell the truth. Court specifically said that its decision was not concerned with freedom of speech or freedom of the press or on what could be reported. The exclusion order was overturned because of the public: the rights of the press representatives are no higher nor lower than the rights of any other member of the public.

29. Fowler v. United States, 258 F.Supp. 638, 644 (C.D.Cal.1966)

The Court found no merit to civil rights action by Ku Klux Klan member to restrain officials from interference. No federal question, no "emergency" nor situation of great urgency. Failed to state claim in civil rights so whole complaint was dismissed.

30. Geise v. United States, 265 F.2d 659 (9th Cir. 1959)

The 6th Amendment right to a public trial is a right of the accused. There is no merit to the contention that he can't waive the public's right to public trial.

31. General Dynamics Corporation v. Selb Manufacturing Co., 481 F.2d 1204 (8th Cir. 1973)

Action for fraud and breach of contract. 2 years after case filed, defendant individual made blanket refusal to answer any interrogatories, invoking the 5th Amendment, and seeking a lengthy indeterminate stay until criminal proceedings were over. The Judge invoked sanctions. Should have made specific objections to individual questions. Burden wasn't met and Court didn't abuse its discretion in finding lack of good faith in the 5th Amendment claim.

32. Grosjean v. American Press Company, 297 U.S. 233, 250, 56 S.Ct. 444, 80 L.Ed. 660 (1936)

State tax based on newspaper circulation is unconstitutional. Court found this was a guise to impede the circulation of information. Informed public opinion is the most potent of all restraints on misgovernment.

33. Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc., 54 F.R.D. 551 (S. D.N.Y.1972)

Motion to suppress photos taken without permission during discovery session. Ordered suppressed. "Discovery is an instrument of justice and therefore carries with it the same need for serenity and calm that surrounds other judicial proceedings. . . . The court has the power and the duty under Rule 26(c) to insist that the discovery process be conducted in an orderly and dignified atmosphere, free from intrusive and distracting side shows which only burden the search for truth." *Id.* at 552. "The ultimate curtailment of abuse requires the constant vigilance of the bench and bar to insure that any conduct threatening the orderly progress of discovery proceedings is nipped in the bud, lest the efficacy of modern discovery proceedings be destroyed. Unsupervised discovery proceedings, therefore are fraught with enough inherent clashes without the intrusion of extraneous bones of contention. *Id,* 553.

34. Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897)

Court has no power to deny a defendant a right to be heard, nor can it render adverse property nor transfer property solely because the Court felt defendants were in contempt of court.

35. Hower v. Weiss Malting & Elevator Co., 55 F. 356, 358 (2 Cir. 1893)

Probable damage to plaintiff is irreparable, and no irreparable damage would result to defendant, so injunction was proper until all facts were fully developed at trial. Defendants were restrained from selling stock.

36. Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, 34 F.Supp. 26 (M.D.Pa.1940)

If plaintiff mistakes his remedy but the facts show he's entitled to some relief, the fact that he asks for declaratory judgment is no bar to granting appropriate relief.

37. International Products Corp. v. Koons, 325 F.2d 403 (2nd Cir. 1963)

Court sealed depositions and enjoined disclosure of anything relating to payments to South American officials, the State Department having joined in the request as furthering U. S. foreign policy. There is no doubt of the constitutionality of the rule allowing the Court to forbid publicizing, in advance of trial, any information obtained by use of the Court's processes. Can also order sealing of the affidavits submitted with the motion. However, Court can't suppress information privately obtained since there can be no prior restraint on disclosing one's own information and views about officials of foreign governments as well as our own.

38. Jackson v. Heiser, 111 F.2d 310 (9th Cir. 1940)

Suit for conversion was brought by British subject.

39. Kaiser Trading Co. v. Associated Metals & Minerals Corp., 321 F. Supp. 923, 930 (N.D.Cal.1970), appeal dismissed, 443 F.2d 1364 (9th Cir. 1971) [Court based ruling on lower court's decision, finding no abuse of discretion.]

Preliminary injunction was sought in breach of contract suit, as well as specific performance and damages. Court granted injunction, citing *Coffee Dan's,* supra, and also said State law controlled in diversity suit. Under both state and federal law, relief is within court's discretion, so found 4 elements needed and looked to federal law to see whether to exercise it. Here, it was necessary to maintain status quo.

40. Katalla Company v. Rones, 186 F. 30 (9th Cir. 1911)

Personal injury suit by employee was properly removed from

state court. Statutes gave jurisdiction between citizens and aliens, and where plaintiff was an alien, there was jurisdiction. Venue may have been improper, but defendant waived objection by instituting removal proceedings.

41. Khedivial Line, S. A. E. v. Seafarers' International Union, 278 F. 2d 49 (2nd Cir. 1960)

An Arabian plaintiff could sue, but didn't state a cause of action because injunctive relief was not possible in admiralty. Only 1 case was ever brought under 28 U.S.C. § 1350, involving treaty violation. This was *Bolchos,* cited supra.

42. Kleindienst v. Mandel, 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)

Congress delegated the power to regulate the entry of aliens to the Attorney General, and when he decided for legitimate reason not to waive the statutory exclusion, the Court wouldn't weigh his decision against the First Amendment rights of those who want to communicate with the alien. At p. 770, 92 S.Ct. 2576.

43. Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed. 2d 398 (1965)

An act requiring addressee to send in post card to get certain mail is an unconstitutional restraint on his first amendment rights.

44. Lewis v. Peyton, 352 F.2d 791, 792 (4th Cir. 1965)

Criminal case. Under 6th Amendment, a criminal defendant has a right to a public trial, and taking testimony at the victim's home in the absence of and without notice to defendant was a deprivation of due process.

45. Lloyd Corporation Ltd. v. Tanner, 407 U.S. 551, 92 S.Ct. 2219, 33 L. Ed.2d 131 (1972)

Shopping center was not dedicated to public use, and the purported exercise of First Amendment rights in distributing leaflets was not related to the purpose of the center's operations. *Marsh* dealt with a company town which had all the attributes of a municipality; *Logan Valley* dealt with labor picketing to convey their message to patrons of the center. Here, the matter was not so related, and there were adequate alternative means of communication.

46. Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1947)

Can't enforce criminal trespass statutes to prevent the circulation of religious literature on the sidewalk of a company-owned town (violates freedom of press and of religion). People there are citizens of the state and the country the same as people who live in municipalities, and they have an identical interest in the functioning of the community.

47. Metal Foil Products Mfg. Co. v. Reynolds Metal Co., 55 F.R.D. 491 (E.D.Va.1970)

Deposition was being taken for use in antitrust suit pending in another district, and there was refusal to answer because of trade secret. Since relevancy and/or admissibility should be determined by trial court, witness was directed to answer and disclose fully with no one present except counsel. Counsel were ordered not to divulge information, and parts of deposition sealed to be opened only by order of trial court.

48. Milsen Co. v. Southland Corp., 16 F.R.Serv.2d 110 (N.D.Ill.1972)

In antitrust suit, Court ordered sequestration of plaintiffs, their employees and agents so they couldn't attend depositions until their own were taken.

49. Munn v. Illinois, 94 U.S. 113, 126, 24 L.Ed. 77 (1876)

State may properly regulate and fix charges for grain storage. A person must submit to be controlled by the public for the common good, "to the extent of the interest he has created," as to property clothed with a public interest. This regulation by statute establishes no new principle of law but only gives effect to an old one.

50. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)

Injunction will not lie as a prior restraint on speech and publication. Statute making certain types of publications nuisances is unconstitutional as to those publishing charges against law enforcement officials. This decision that the statute infringes 1st amendment rights is because of its operation, and its effect, without regard to the possible truth of the assertions.

51. Nebbia v. New York, 291 U.S. 502, 533, 54 S.Ct. 505, 514, 78 L.Ed. 940 (1934)

"Affected with a public interest" is equivalent of "subject to the exercise of the police power." In promoting the general welfare, private property rights must yield to the public good, so state may regulate milk industry.

52. New York Times Co. v. Sullivan, 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)

Public official sued paper for libel in advertisement, and sought punitive damages. The 1st Amendment guarantees freedom of expression on public questions. There must be free political discussion to assure unfettered interchange of ideas for bringing about the political and social changes desired by the people.

53. NLRB v. Babock and Wilcox Company, 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956)

Access to private property may be limited as to non-employees where the employees themselves can learn the advantages of self-organization in other ways.

54. Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir. 1964)

This was private anti-trust suit referring specifically to the Publicity in Taking Evidence Act, 15 U.S.C. § 30. This type of action is very important in "vigilant enforcement of antitrust laws," and Congress even provided that decrees in Government suits are prima facie evidence in private suit.

55. Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1

Order below enjoined distribution of leaflets in a town. Held: protestors haven't sustained heavy burden to justify a prior restraint. Though distasteful, so long as the communications are peaceable, they needn't be acceptable. Can't use injunctive power to stop public criticism, and the claimed invasion of privacy is not enough justification.

56. Paramount Pictures Corp. v. Holden, 166 F.Supp. 684 (S.D.Cal. 1958)

Injunction denied in diversity case. Under both California and federal law, it's rule that power to issue is discretionary and shouldn't be exercised except where it's clear that the question presented by the litigant who seeks the injunction is free from doubt.

57. Pennekamp v. Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946)

Papers were found guilty of contempt for editorials criticizing the administration of justice. Court reversed. *Bridges* says that ordinarily, the orderly operation of the courts is the primary and dominant requirement in the administration of justice. Only the Supreme Court can determine whether statements and circumstances in each case constitute a clear and present danger to the impartiality

and good conduct of the Courts. Here the danger to impartiality or to fair judicial administration hasn't the clearness and immediacy necessary to close the doors to permissible public comment.

58. People of the State of California v. Bozarth, 356 F.Supp. 667 (N.D. Cal.1973)

This involved claims by the U. S. and State to reach funds impounded in a criminal case. Court applied the *Coffee Dan* test in denying an injunction.

59. Phoenix Newspapers, Inc. v. Jennings, 107 Ariz. 557, 490 P.2d 563 (1971)

This was based on the Arizona Constitution, and held that defendant couldn't require exclusion of the public at preliminary hearing. The community has a right to observe the administration of justice, and defendant can't waive the people's right to an open trial. [BUT SEE Geise v. United States, supra, contra.]

60. Porto Rico Telephone Co. v. Puerto Rico Communications Authority, 189 F.2d 39 (1st Cir. 1951)

Injunction won't lie where there is adequate remedy at law. If defenses there fail, he can return again for injunctive relief.

61. [The] Red Lion Broadcasting Co., Inc. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969)

Fairness doctrine and related rules don't violate the First Amendment. There's no constitutional right to get a license, so there's no right to monopolize it to the exclusion of other citizens. Viewers and listeners have the right to receive information.

62. Roberto v. Hartford Fire Insurance Co., 177 F.2d 811 (7th Cir. 1949)

Alien had been ordered deported, but deportation was stayed pending appeal. He entered into a contract before the mandate came down. Held: the contract was legally valid as he was a resident alien legally in the U. S. when it was made, and it was enforceable after his deportation under 28 U. S.C. § 1332(1)(c).

63. Sam Andrews' Sons v. Mitchell, 457 F.2d 745, 749 (9th Cir. 1972)

In a case dealing with regulation of alien workers, the Court said, "Any person within the United States, citizen or alien, resident or non-resident, is protected by the guarantees of the Constitution."

64. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)

Criminal had been denied a fair trial because of massive publicity. Needn't show identifiable prejudice where the possibility of prejudice is clear from the totality of the circumstances. Court could and should have: regulated the press within the Court; insulated witnesses from interviews; controlled the release of information by all witnesses, counsel and police. Counsel had made available to the press some "evidence" which was never offered, other that was clearly inadmissible. "The exclusion of such evidence in court is rendered meaningless when the news media make it available to the public." *Id*, at 360, 86 S.Ct. at 1521.

65. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)

Restrictive covenant had been recorded, and suit was brought to prevent Negroes from taking possession. Restrictive agreements alone don't offend 14th Amendment rights but since the purposes of the agreement can only be secured by judicial enforcement in the Courts, it becomes State action. Power of the State to create and enforce property rights must be exercised within the confines of the 14th Amendment.

66. Sierra Club v. Hickel, 433 F.2d 24, 33 (9th Cir. 1970)

Preliminary injunction must be based on established equitable grounds. Cites *Dymo Industries,* supra, in holding that preliminary injunction shall not issue in a doubtful case. Also, must show irreparable injury, and the Court must balance possible damage to both. [NOTE: The Supreme Court affirmed because of lack of standing, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)]

67. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)

Administrative review denied because of lack of standing to seek injunctive relief. Plaintiffs must have a direct stake in the outcome.

68. State of Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950)

This is an explanation of the reason for denying certiorari after a finding that broadcasters were guilty of criminal contempt. "On the other hand our society has set apart court and jury as the tribunal for determining guilt or innocence on the basis of evidence adduced in court, so far as it is humanly possible." *Id,* at 920, 70 S.Ct. at 256.

69. Suravitz v. Pristasz, 201 F. 335 (3rd Cir. 1912)

The court had jurisdiction of a breach of promise suit where plaintiff was from Austria and defendant was a citizen of Pennsylvania.

70. Tribune Review Publishing Co. v. Thomas, 153 F.Supp. 486 (D.C. Pa.1957), aff., 254 F.2d 883 (3rd Cir. 1958)

In prohibiting taking pictures in the vicinity of the courtroom, the Judge said that the fact that representatives of the press and newsmen are in the business of disseminating news gives them no special privilege or special constitutional right not possessed by other members of the public.

71. United States ex rel. Bennett v. Rundle, 419 F.2d 599 (3rd Cir. 1969)

Can't exclude public from a Jackson-Denno hearing which is part of the trial, even though held outside the jury's presence. That hearing is different from other matters outside the presence of the jury from which the public MAY be excluded, such as discussions regarding appointment of counsel for indigent defendant, side-bar conference regarding question of law or motion for severance and bail, or conferences in chambers on other matters not properly for the jury.

72. United States v. 18 Packages of Magazines, 238 F.Supp. 846 (N.D. Cal.1964)

Customs officials had seized magazines as obscene, and Court granted claimant's motion for summary judgment, saying, "It is 'manifest' 'without argument,' the Government contends, that the language of the First Amendment could not refer to the 'foreign press.' Even if it be conceded, arguendo, that the 'foreign press' is not a direct beneficiary of the [First] Amendment, the concession gains naught for the Government in this case. . . . As Mr. Justice Brennan pointed out in a Quantity of Copies of Books v. State of Kansas, [378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809], supra, there is a *'right of the public* in a free society to unobstructed circulation of nonobscene books' (emphasis added). The First Amendment surely was designed to protect the rights of readers and distributors of publications no less than those of writers or printers. Indeed, the essence of the First Amendment right to freedom of the press is not so much the right to print as it is the right to read.

The rights of readers are not to be curtailed. . . ." *Id*, 847–848.

73. United States v. General Motors Corp., 352 F.Supp. 107 (E.D.Mich. 1973)

A bill of particulars in a criminal case may be made public. The court lists reasons for presenting criminal cases in public view.

74. United States v. Kline, 221 F.Supp. 776 (D.C.Minn.1963)

Criminal case. "If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day." It appears that printed reports were factually accurate, so publication of them wouldn't prejudice jurors. Anyhow, presumably jurors are true to their oaths and observe the admonitions and instructions of the Judge.

75. United States v. Kobli, 172 F.2d 919 (3rd Cir. 1949)

Criminal case. It was improper to issue a general order clearing the room before the jury panel was brought in merely because of overcrowding. Press was specifically NOT excluded, but it was held that even idle spectators have a right to be present.

76. United States v. Lopez, D.C., 328 F.Supp. 1077, 1087

Skyjacking case. During testimony on magnetometer, defendant and the public were excluded, though his counsel was present. Exclusion for limited purposes and for short periods of time is sometimes justified in the public interest or in the interest of defendant.

77. United States ex rel. Orlando v. Fay, 350 F.2d 967 (2nd Cir. 1965)

Habeas corpus denied. Because of disruptions, Judge in state court cleared the courtroom. A later motion to readmit was denied except for the press and members of the bar. This was no denial of defendant's right to a public trial. Even this 6th Amendment right is subject to the Judge's power to keep order in the courtroom.

78. United States v. Sorrentino, 175 F. 2d 721 (3rd Cir. 1949)

Criminal case. The rights listed in the 6th Amendment, such as a speedy and public trial, are privileges afforded an individual member of the public accused of crime. This right can be waived, and in this case it was.

79. United States v. United Shoe Machinery Co., 198 F. 870 (D.C.Mass. 1912)

The taking of depositions before an examiner in an equitable suit under equity rule 67 (29 Sup. Ct. xxxiii) is not a judicial trial nor a part of a trial, and neither the public nor representatives of the press have a right to be present at such taking. Until a deposition has been presented to the court, it doesn't become evidence in the case, nor has either party till then an opportunity to be heard on the question of competency, materiality, or relevancy of the statements made by the witness, and the public can have no right to know what the testimony is until the court knows what it is.

80. Valanga v. Metropolitan Life Insurance Company, 259 F.Supp. 324 (E.D.Pa.1966)

Action brought to recover proceeds of life insurance was dismissed. Couldn't be brought under 28 U.S.C. § 1350, which deals strictly with torts, because this is a contract suit. Russian citizen didn't qualify as a diversity claimant because of jurisdictional amount.

81. Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914 (1876)

In an ejectment action, the answer and appearance were stricken solely because defendant was a

**208**

rebel. Reversed. A sentence pronounced without a hearing and opportunity to be heard is not a judicial determination. There is no jurisdiction, and the judgment is a nullity.

82. Zemel v. Rusk, 381 U.S. 1, 17, 85 S. Ct. 1271, 1281, 14 L.Ed.2d 179 (1965)

"[T]he right to speak and publish does not carry with it the unrestrained right to gather information."

ALSO CITED:

"Fair Trial and Freedom of the Press," 19 F.R.D. 16 (Panel Discussion 1955)

Problem is how to guarantee a fair trial. On 18, "One solution is that which has been adopted in England. There the right to a fair trial has triumphed over the right to freedom of the press, wherever the two come in conflict. Prior to the final disposition of a case, newspapers are not permitted to publish anything but an unvarnished, uncolored account of the proceedings in open court, and summaries of the text of documents filed in court and open to the public. To write anything else concerning a pending case constitutes contempt of court punishable by a heavy fine."

STANDARDS RELATING TO FAIR TRIAL AND FREE PRESS, approved by the House of Delegates of the American Bar Association, February, 1968.

Standard 3.1 recommends exclusion of the public from preliminary or other pretrial hearings in criminal cases where dissemination of evidence or arguments at the hearing may disclose matters which will be inadmissible in evidence at the trial and is, therefore, likely to interfere with the right to a fair trial by an impartial jury.